KRŒMER *against* The COMMONWEALTH.

IN ERROR.

THE plaintiff in error was indicted in the Quarter Sessions of *Berks* county, in *April* 1810, of a perjury; and upon his conviction the following sentence was passed upon him by that court: " And now to wit, this 1st day of *April* " 1810, the sentence and judgment of the court is, that the " said *Frederick Krœmer* pay a fine of 100 dollars to the com- " monwealth, undergo an imprisonment at hard labour for " six calendar months from this day in the gaol of *Berks* " county, and during that time be confined, *fed, clothed*, and " *treated* as the law directs; and further that the said *Frede-* "*rick Krœmer* shall hereafter be disqualified from holding " any office of honour, trust, or profit in this commonwealth, " and from being admitted as a legal witness in any matter " of controversy, and that he pay the costs of prosecution, " and stand committed until this sentence be complied with."

The judgment being removed by writ of error to this court, various exceptions were taken to the record and proceedings; but the two principal errors assigned were, 1. That the Quarter Sessions had no jurisdiction of *perjury*. 2. That the judgment was for more than the law directed, inasmuch as the law prescribed nothing in relation to the feeding, clothing, or treatment of a convict for perjury.

*Hopkins* argued for the plaintiff in error, and *C. Smith* for the commonwealth.

shall be confined, *fed, clothed*, and *treated* as the law directs,

*Marginal note:*

1811.

WILSON
*v.*
WILSON.

*Lancaster,
Monday,
May 27,*

The courts of Quarter Sessions for this state have jurisdiction of all criminal offences which were not capital at the passing of the act of 22d of *May* 1722 Their jurisdiction remains unchanged, although since that act, several offences which were then felonies of death, have ceased to be so; they accordingly have jurisdiction of *perjury.*

Persons convicted of perjury, are liable to fine and imprisonment at hard labour, but not to any particular kind of treatment as to diet or discipline. A sentence therefore which adjudges that the convict is erroneous.

1811.

Krœmer
v.
Common-
wealth.

Tilghman C. J. This is a writ of error to the court of Quarter Sessions of the county of *Berks*, in which the plaintiff in error was indicted and convicted of perjury. Many errors have been assigned. There are but two however, on which I think it necessary to give an opinion. The first is that the court below had no jurisdiction. 2. That the punishment awarded, was greater than is warranted by law.

1. As the court of Quarter Sessions exercises an extensive criminal jurisdiction, it is of importance that no doubt should remain on that subject. I shall therefore endeavour to mark the line of its jurisdiction distinctly, in order that the legislature if they think it necessary may alter it.

It is provided by our present constitution, made in the year 1790, that there shall be a court of " Quarter Sessions of the " Peace," and a court of Common Pleas for each county; and that the judges of the court of Common Pleas of each county, *any two of whom* shall be a quorum, shall compose the court of " Quarter Sessions of the Peace." It is also provided, that the judges of the court of Common Pleas in each county, shall by virtue of their offices be justices of Oyer and Terminer, and General Gaol Delivery, for the trial of *capital and other offenders* therein, and any two of them, the *president being one*, shall be a quorum. The constitution is silent as to the jurisdiction of the Quarter Sessions; from whence it is to be inferred, that it was considered as a court whose jurisdiction was well known, and in which it was not intended to make any alteration. This leads me to inquire, what was the jurisdiction of this court previous to the adoption of the constitution? At the time of the *American* revolution, all authority under the king of *Great Britain* having ceased, it became necessary to reorganize the courts of justice. Accordingly we find, that by an act passed 28th *January* 1777, the several courts were reestablished with the same jurisdiction, that they possessed before that time. The question recurs, what was the jurisdiction of the court of Quarter Sessions? On this head we are not left to conjecture. The foundation of that and other courts, is found in an act passed the 22d of *May* 1722, intitled " An act for establish-" ing courts of judicature in this province." By the second section it is enacted, that there shall be a court styled " The

" General Quarter Sessions of the Peace and Gaol Delivery," holden and kept four times a year in each county. The third section provides, that the justices of the peace or any three of them, " shall and may hold the said General Ses-" sions of the *Peace* and *Gaol Delivery* according to law, and " as fully and effectually as any justices of the *peace*, justices " of the *assize*, justices of *Oyer and Terminer*, or of *Gaol De-*" *livery* may or can do." It would seem from this, that the Quarter Sessions were to have jurisdiction of *capital* offences. But that this was not the case, will appear clearly from other parts of the act. The third section directs, that every recognisance taken before any of the justices for suspicion of " any manner of felony, or other crime *not triable* " *in the court of Quarter Sessions of the Peace and Gaol De-*" *livery*" shall be certified before the *justices of the Supreme Court of Oyer and Terminer.* By the eighteenth section the justices of the *Supreme Court* are authorized and impowered from time to time to deliver the gaols of all persons, who then were or thereafter should be committed for " treason, " murder, and such other crimes, as by the laws of the pro-" vince then were, or thereafter should be made *capital or* " *felonies of death.*" When all parts of this act are considered, the intention is plain, that crimes punishable with death should be tried by the justices of the Supreme Court, and all other offences by the courts of Quarter Sessions. But the justices of the Supreme Court had likewise jurisdiction of inferior offences, when holding courts of Oyer and Terminer and General Gaol Delivery. That this was the boundary of the respective jurisdictions, I have always understood, and the records of the several courts before the revolution, will prove it. By the merciful improvements of our penal code in the year 1790 and since, no crime but murder of an atrocious nature, is now punished with death. But that has produced no alteration in the criminal jurisdiction, so far as relates to the Sessions. Those crimes which were *formerly* punished with death, remain out of the jurisdiction of the courts of Quarter Sessions. *Act of* 22*d April* 1794, *sec.* 16. They may be tried however by the same persons who now compose the court of Quarter Sessions, provided the president attends, because, as before mentioned, the

judges of the courts of Common Pleas compose the courts of Quarter Sessions, and by virtue of their offices, are justices of *Oyer and Terminer* and *General Gaol Delivery.* It sometimes happens, that the sickness of the president prevents the holding of courts of Oyer and Terminer, and in that case, the offences of perjury, forgery &c., may be tried in the Sessions. If this is thought improper, the legislature have the power to order it otherwise. As the law now stands, I have no doubt of the jurisdiction of the court of Quarter Sessions.

2. I will now consider the second point, the judgment rendered by the court below. In order to understand this matter, it will be necessary to take a view of several acts of assembly relative to the punishment of perjury. By the fourth section of the act of 5th *April* 1790, a certain class of offences in which perjury is included, were made punishable (instead of cutting off the ears &c.) by fine and imprisonment at hard labour not exceeding the term of two years; and during the term of imprisonment they were to be fed, clothed, and treated in the manner directed in another part of the said act. This manner of treatment was different in the gaol of the county of *Philadelphia* from what it was in gaols of the other counties, for reasons which it is unnecessary to mention. The present subject relates to the latter only. The twenty-eighth section of the act describes the manner in which those persons should be treated, who were confined in gaols, other than that of the county of *Philadelphia.* Without mentioning the whole it is sufficient to say, that the keepers of the gaol were authorized, in case the convicts were *idle*, or *refused to labour*, or were guilty of any *trespass*, to withhold from them all sustenance, except bread and water, to put *iron yokes* round their necks, *chains* upon their *legs*, or *otherwise restrain in irons* such as should be incorrigible or irreclaimable without such severity. This mode of treatment may amount to a heavy punishment, and it has always constituted part of the *judgment* against convicts, who were subject to it. To avoid prolixity, the judges have generally used this mode of expression, " that he shall be confined, " fed, clothed, and treated as is directed by law." These are

the expressions in the present judgment, and that is the error complained of.

Having shewn what was *formerly* the punishment of perjury, let us see what it *now* is. This will be found in an act intitled " An act for the punishment of perjury, or suborna- " tion of perjury," passed 3d *April* 1804. The convict is made liable to a fine not exceeding 500 dollars, imprisonment at *hard labour* during any term not exceeding seven years, disqualification from holding any office of honour, trust or profit, and from being a legal witness in any matter of controversy. The second section repeals so much of any former law, as is thereby altered or supplied. This act was certainly intended to define the complete punishment of perjury; and every former law so far as it related to punishment was repealed. Now we see that nothing is said in this act of the *manner* in which convicts were to be treated during their imprisonment. The question then is, had the court a right to direct the manner? They certainly had not, unless this act can be connected with the former, so as to retain that part of the former which prescribes the *manner* of treatment. If the manner of treatment is a substantial part of the punishment, and if every thing in former laws *inflicting punishment* was repealed, the connexion cannot be supported. But besides, it will appear that the twenty-eighth section of the act of 5th *April* 1790, was confined to persons sentenced to hard labour under the provisions of *that act.* The expressions are, " the malefactors sentenced to hard labour *as aforesaid*," that is to say, under the provisions in *that act*, for the punishment of the several offences therein mentioned. I know of no law by which persons in general, who are sentenced to imprisonment at hard labour, are made liable to any particular treatment. On the contrary, the mode of *treatment* is prescribed in the several acts by which the punishment is directed. This will appear by the act of 22d *April* 1794, sections 4, 5 and 6, by which persons punishable by imprisonment at hard labour for the crimes of high treason, arson, rape, murder of the second degree, forgery, and counterfeiting of gold and silver coin, passing counterfeit notes of sundry banks, and maihem, are expressly made subject to the *treatment* prescribed by an act intitled " An

1811.

KRŒMER
v.
COMMON-
WEALTH.

" act to reform the penal laws of this state," or by the provisions of the said act of 22d *April* 1794, which made some alteration in the treatment prescribed by the former. And it is remarkable, that in the seventh section of the act of 22d *April* 1794, the punishment of voluntary manslaughter, is by hard labour and solitary confinement, but no particular treatment is prescribed; from whence I infer, that persons convicted of that offence, were not intended to be liable to the same treatment with the offenders mentioned in the fourth, fifth, and sixth sections.

But it has been contended, that the words in the judgment, which relate to the feeding, clothing and treatment, shall be rejected as surplusage, because, if the law directs no particular manner of feeding &c., that part of the judgment can have no operation. I cannot think so. These words were certainly intended to have an operation, and will perplex the gaoler who has the custody of the prisoner. To adjudge that a man shall be fed, clothed and treated as the law directs, implies an assertion, that the law directs some particular mode of feeding &c. A judgment in a criminal case must not be expressed in terms which tend to mislead the person by whom it is to be executed. I am therefore of opinion that the judgment of the court of Quarter Sessions was erroneous.

YEATES J. The present writ of error has been argued with singular zeal and ingenuity. I deem it superfluous to consider all the different exceptions which have been taken to the proceedings; but it is highly important to the peace and good order of the community, that the opinion of this court should be known as to the legitimate jurisdiction of the courts of General Quarter Sessions of the peace and Gaol Delivery of this state.

It has been strenuously contended, that the powers of the Sessions here are the same as in *England;* that their authority is derived from the commission of the justices founded on the statute of 34 *Ed.* 3. *c.* 1., and that the words of the statute have received a known construction. 2 *Hawk. c.* 8. *s.* 18., 4 *Bla. Comm.* 271. No indictment lies before justices of the peace for forgery or for perjury at common law; but perjury on the statute 5. *Eliz.* is indicta-

ble in the Sessions, because it is so directed by the statute. *Regina* v. *Yarrington*, 1 *Salk.* 406. An indictment for perjury at the Quarter Sessions at common law, was quashed for want of jurisdiction. *Rex* v. *Bainton*, 2 *Strange* 1088.

I am fully satisfied, that the jurisdiction of the Sessions is solely founded on our own acts of assembly, and therefore I shall examine those laws as far back as I have materials in my power.

The establishing of all courts of judicature within the government, was granted to the first proprietary by the royal charter. 1 *Dall. St. Laws, App.* 2. *sec.* 5. An act for establishing courts of judicature was passed, 13 *Wil.* 3. in 1701, 1 *Miller's ed. of laws* 14., which was repealed by queen *Anne* 7th *February* 1705, *Ib.* 18. Another act was made, 9 *Anne*, in 1710, *Ib.* 46., which was also repealed 20th *February* 1713, *Ib.* 51. An act for establishing the courts of General Quarter Sessions was made 28th *May* 1715, *Ib.* 56., which was repealed by the lords justices 21st *July* 1719, with two other acts for establishing courts of Common Pleas, and a Supreme or Provincial Court of law and equity, *Ib.* 74. An act for the better recovery of fines and forfeitures due to the governor and government of this province, was passed 28th *May* 1715, which directed that all fines &c. set in the Supreme Court, or in any of the courts of Common Pleas, courts of *General Quarter Sessions of the Peace* and *Gaol Delivery*, or before the special courts of Oyer and Terminer, shall be estreated into the Supreme Court, *Ib.* 57. This act continued in force, until it was repealed by a law passed 18th *March* 1780. The act for establishing courts of judicature, passed 22d *May* 1722, 1 *Dall. St. Laws* 171. The second section erects a *court of General Quarter Sessions of the Peace and Gaol Delivery*, which shall be holden four times in every year in each county; and by section 3, the justices thereof shall hold the same court according to law, and as *fully and effectually as any justices of the peace, justices of the assize, justices of Oyer and Terminer or of Gaol Delivery* may or can do. The fourth section directs them to certify their recognisances to the next sessions; but every recognisance for suspicions of any manner of felony or other crime *not triable before them*, shall be certified be-

fore the justices of the Supreme Court of Oyer and Terminer. The eighteenth section gives very extensive powers to the judges of the Supreme Court, and it is declared by section 19, that all capital offences or felonies of death shall be inquired of, heard and determined before the same judges. It is enacted then in express terms, that the courts of General Quarter Sessions of the Peace and Gaol Delivery shall possess all the powers of justices of the assize, of Oyer and Terminer and Gaol Delivery; but as to capital offences or felonies of death, the jurisdiction is confined to the Supreme Court. The law, as well as our present constitution, clearly had in view the powers exercised by such official characters in the kingdom of *England*, concerning which an accurate knowledge can be obtained from the *English* books. But the limits of jurisdiction of the Supreme Court and Quarter Sessions are precisely drawn. The Sessions have a concurrent jurisdiction with the Supreme Court as to all crimes cognisable before them, except as to capital offences or felonies of death. Perjury was an offence not capital, and of course triable in the Sessions. There is no ambiguity in the words of the act.

We are told that justices of the peace in *England*, notwithstanding the general expressions of *Stat.* 34 *Ed.* 3. *c.* 1., seldom if ever try any greater offence than small felonies within the benefit of clergy; and that they have no jurisdiction in cases of forgery or perjury at common law, according to the authorities cited. Be it so. The law is so settled by judicial decisions. But in *Pennsylvania*, the act of assembly has received a different construction, and the law is settled otherwise. It has been the uniform practice since the passing of the act, to prosecute forgery and perjury either in the Sessions or Court of Oyer and Terminer, at the election of the person who conducts the prosecution; and numerous judgments for those offences have been rendered in the Sessions. The practical exposition of a law during a period of eighty-seven years, would have a most powerful effect, if even the words of it were dubious, which I firmly deny to be the case here. I have no doubt therefore of the power of the Quarter Sessions to try the present indictment.

Exceptions have been taken to the judgment given upon

the indictment, inasmuch as the prisoner was sentenced to undergo an imprisonment at *hard* labour in the gaol of *Berks* county, and during that time to be *confined, fed, clothed,* and *treated* as the law directs. It is admitted, that the other parts of the sentence were conformable to the act for the punishment of perjury or subornation of perjury, passed on the 3d *April* 1804. During the argument, it was taken for granted that the adjective *hard* was not to be found in the act. And so it appeared from vol. 7 of *Bioren's* edition page 398. But the sixth volume of *Francis Bailey's* edition page 513, inserts that word. I regret that such a variance should exist in the different editions of our laws, as it may lead to very serious consequences. I found myself therefore under the necessity of examining the original law in the secretary's office, and found that the terms *hard labour* were included therein. The first ground of exception is therefore removed, but the last remains in full force. It has been said on the part of the commonwealth, that the second section of this act repeals so much only of any former law as is thereby altered or supplied, and consequently the provisions in the close of the fourth section of the law of 5th *April* 1790, 2 *Dall. St. Laws* 801., *as to confining, feeding, clothing and treating a convict as the law directs,* remain in full force. It is contended that the punishment of perjury or subornation of perjury is merely cumulative; but if the court should be of a different opinion, those words in the judgment are merely superfluous, and impose at all events no hardship on the prisoner which is not warranted by law. To this it may be justly answered, that odious as the crime of perjury is, and injurious as it may be to the interests of society, the punishment prescribed by the legislature is sufficiently severe, without recurring to forced construction. A fine not exceeding 500 dollars, imprisonment at hard labour during any term not exceeding seven years, disqualification from holding any office of honour trust or profit, and disability as a witness, are serious evils, which would deter any man from the commission of the offence, who can be restrained by the passion of fear. If the legislature had intended to have gone further, they would have said so in express terms.

VOL. III.　　　4 E

*Margin:* 1811. KRŒMER *v.* COMMONWEALTH.

1811.

KRŒMER

COMMON-
WEALTH.

They seem to have made these provisions as a complete substitute for the former punishment prescribed by law.

The words cannot be deemed superfluous. They have a definite meaning in the act of the 5th *April* 1790, sec. 28, as to malefactors sentenced to hard labour in the several counties in this state, other than the county of *Philadelphia*. All power of self government is taken from them, and in case they shall refuse to labour, are idle, or are guilty of any trespass, all sustenance except bread and water may be withheld from them, iron yokes may be put around their necks, chains upon their leg or legs &c. In the fourth, fifth, sixth, ninth, and tenth sections of the act of 22d *April* 1794, 3 *Dall. St. Laws* 599., we find superadded to the punishment at *hard labour* of the several offenders therein specified, that they shall be kept treated and dealt with in the manner prescribed by the act of 5th *April* 1790; but in the seventh section, it is declared, that one convicted of a second manslaughter shall undergo an imprisonment at hard labour for any time not less than six nor more than fourteen years. Two conclusions may be fairly deduced herefrom; one, that where it was meant to inflict this mode of treatment, it is so expressed in plain terms; and in the second place, that these words carry with them a precise and distinct meaning. If the expressions of the act do not imperiously demand, that the *confining, feeding, clothing and treating the prisoner as the law directs*, should be made part of the sentence, the insertion of them therein naturally leads to an undue severity on the part of the gaoler, and tends to mislead a ministerial officer in the discharge of his duty in a point which ought to be free from all ambiguity. I am therefore of opinion, that the judgment of the Sessions should be reversed.

BRACKENRIDGE J. concurred on both points.

Judgment reversed.