## Commonwealth *v.* Sterling, Aplnt., et al.

Argued November 28, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*G. Levering Arnhold,* for appellant.

*Vincent A. Carroll,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, January 2, 1934:

Joseph Sterling pleaded guilty to the charge of murder. The court below, after hearing the Commonwealth's evidence, fixed the degree of the crime as murder in the first degree and sentenced Sterling to death.

The sole question is whether the penalty fixed by the lower court, when considered in relation to the acts done by defendant, is too severe and disproportionate; should it be mitigated to life imprisonment?

This court has the power to reverse, modify or affirm the judgment of the trial court, not only by statutory authority, but as an inherent judicial function of an appellate court: Com. v. Garramone, 307 Pa. 507; Beale v. Com., 25 Pa. 11; Daniels v. Com., 7 Pa. 371; Drew v. Com., 1 Whart. 279, 281. See Act of June 16, 1836, P. L. 784, section 1.

The death penalty has been fixed by the legislature in the belief that it not only protects society from the anti-social actions of the particular person condemned and punishes him as well, but that it is, in its imposition in each case, a deterrent to others who may contemplate injury to society. The propriety of this policy is not for our determination. We apply the law enacted by the legislature in the cases as they arise. The alternate penalties of death and life imprisonment are provided, not with the idea that the courts may impose the one or the other arbitrarily or without reason upon a conviction of first-degree murder. Where the heinous offense is lessened because of the mitigating circumstances arising from the emotion or the pressure of events under which the offender has acted, or for other satisfactory cause, and he is customarily of law-abiding nature and habits, the court is justified in fixing the lesser of the two penalties; but it cannot undermine the policy and intention of the legislature by permitting its own feelings to intrude on the wisdom of that policy.

Charles Downey, the decedent, had resided for sometime prior to his death at 917 South 16th Street, in the City of Philadelphia, with a friend, Frank Cassidy. Both of these men were advanced in years. An acquaintance of the defendant had heard a rumor to the effect that decedent had recently come into possession of several thousand dollars, the proceeds of an insurance policy on his sister's life, and communicated this to defendant. The defendant and this acquaintance, a week or so before the killing, broke into the house on 16th Street, but, finding

nothing of value, left. Neither of the old gentlemen was at home.

On December 17, 1932, the defendant, with a friend, Robert Harris, came to the door of the 16th Street house, rang the door bell, and when Downey responded, thrust their way by him in silence and proceeded through the hallway to the kitchen, where Cassidy was sitting. Downey apparently followed the intruders to the kitchen. The defendant, as he entered the kitchen, drew a revolver, which was offered in evidence. Cassidy attempted to escape and was struck with a revolver several times on the head by Harris, defendant's companion. Almost immediately Cassidy heard a shot. A little later, following a trail of blood, he went to the house next door to ask for Downey and found him there with wounds through the neck and hand, from which he died four days later, on December 21, 1932. Defendant was apprehended, and on December 31st signed a written confession in which he admitted that he went to the decedent's residence with the intention of robbing decedent of the money which he believed decedent had, and that a shot from his revolver wounded decedent and caused his death.

The defendant has confessed to the killing, which is admittedly murder in the first degree as provided in the Act of 1860, P. L. 382, section 74, but he declares he is not a hardened criminal, did not intend to shoot or kill anyone in the commission of this robbery, and did not voluntarily pull the trigger which discharged the gun and caused the death of decedent. He claims that the gun was discharged by accident when Downey bumped his arm in trying to escape.

The defendant intentionally armed himself with a dangerous weapon and proceeded to decedent's home with the intention of committing robbery upon the person of the decedent. Whether the gun was discharged accidentally or not does not alter the legal effect of defendant's acts, though we find it difficult to believe defendant's

contention that the trigger, requiring some effort to move, was discharged accidentally by the mere brushing of defendant's arm by the decedent. The cases cited by appellant, Com. v. Garramone, supra, and Com. v. Ritter, 13 D. & C. 285, involve very different circumstances from defendant's case. In the former, in which this court reduced the sentence from death to life imprisonment, the defendant acted under the stress of great passion and provocation, while in the latter, the defendant, a man "destroyed by drink and desperate by reason of the fact that he had come to the end of his resources," subject to a frenzied and jealous passion, murdered. In this case now before us the homicide was the result of a mental rather than an emotional impulse. Though the killing might not have been deliberately planned, the likelihood of its occurrence was unquestionably contemplated and callously ignored by the defendant, who most certainly intended to commit a crime which he knew might well give rise to it. Defendant's end was mercenary; it included within the means of accomplishment the employment of arms with the expected result of wounding and death. It may be said that in practically every case of robbery the death of the victim is not planned by the participants; in fact, in many it is a result which the perpetrators particularly attempt to avoid. Nevertheless, a killing in the perpetration of such an act has been termed by the legislature murder in the first degree.

This court is not permitted to substitute its opinion for that of the court below unless the court below has abused the discretion given to it in this class of cases. Unless it clearly appears that such discretion has been abused, that the lower court has overlooked pertinent facts or has disregarded the force of evidence or erred in its law, we are without authority to act.

After a careful review of the evidence, we find all the elements of murder in the first degree and can discover

no extenuating or mitigating circumstances which justify modifying the sentence of the court below.

Judgment affirmed and record remitted for the purpose of execution.

See next case below.