Peter Kenneth DeMARRIAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19361.

United States Court of Appeals, Eighth Circuit.

Jan. 3, 1972.

---

David L. Bergren, Ft. Pierre, S. D., for appellant.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., Richard D. Hurd, Asst. U. S. Atty., for appellee.

Before GIBSON, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

On this appeal, we consider a sequel to DeMarrias v. United States, 444 F.2d

162 (8th Cir.1971) (DeMarrias I). Peter Kenneth DeMarrias, an enrolled Indian who resided upon the Sisseton-Wahpeton Indian Reservation of South Dakota, was convicted by a jury of second degree murder in violation of 18 U.S.C. §§ 1153 and 1111 for killing his half-brother, Jerry DeMarrias. At the same trial, the jury also found appellant guilty on two counts of assault with a dangerous weapon. See note 2, *infra*. The district court sentenced DeMarrias to life imprisonment on the murder charge and five years imprisonment on each of the assault charges, all sentences to run concurrently.

Thereafter, DeMarrias' trial attorney filed a notice of appeal to this court, but the attorney declined to prosecute the appeal because, in his judgment, the case lacked merit. The trial judge concurred with this view and therefore denied DeMarrias' request for appointed counsel. As a result, the appeal was not perfected and was ultimately dismissed. These post-trial incidents came to our attention in *DeMarrias I*. In that decision, we expressed strong disapproval of the procedures which had aborted review of DeMarrias' conviction, and we reinstated his appeal.

We have now considered this delayed appeal and find it meritorious. For the reasons stated below, we set aside the second degree murder conviction and remand this case for further proceedings.

Appellant presents seven questions for review. Since we reverse his second degree murder conviction for insufficient evidence, we find it unnecessary to discuss those questions which level additional attacks upon that conviction.[1]  We

---

1. These questions and the circumstances underlying each are:
   1) Was appellant denied the right to indictment by a grand jury? Here, appellant criticizes the government for obtaining a dismissal of a manslaughter indictment and then resubmitting the case to a second grand jury in order to secure an indictment for second degree murder.

   2) Was appellant's plea of not guilty to the original manslaughter charge voluntary? Here, appellant argues that he should be allowed to withdraw his plea of not guilty to the original manslaughter charge because the government failed to inform him that it would resubmit the case to the grand jury if he pleaded not guilty.

will discuss appellant's remaining contentions in conjunction with our discussion of the sufficiency of the evidence.

On December 6, 1967, Peter DeMarrias, his mother, Louisa Johnson, his half-brother, Jerry DeMarrias, and two friends, Bernice Johnson and Doris Driver, drove from Louisa Johnson's reservation home to Clara City, South Dakota, a distance of ten miles. In Clara City, the group purchased groceries and a considerable quantity of wine, apparently four half-gallons and one fifth. After making these purchases, the group returned to Louisa Johnson's home, arriving at approximately 3:00 P.M. The group consumed the fifth of wine during the return trip.

The sequence of events becomes cloudy at this point. There was no clock in the Johnson home, and the trial testimony of those present reflects a lack of time consciousness. In addition, the consumption of alcohol contributed to dimming their recollection of events. Upon arriving at the Johnson residence, the participants turned their attention to the remaining two gallons of wine. They also engaged in a singing session, striking an old washtub with a stick for musical accompaniment. Doris Driver and Bernice Johnson testified that they became intoxicated and passed out before nightfall. Louisa Johnson stated that she fell asleep shortly thereafter. The testimony of these witnesses established that Jerry DeMarrias was alive at nightfall.

The record is devoid of any evidence indicating what took place between nightfall and midnight, a gap of approximately six hours. At trial, each member of the group claimed to have no recollection of any events occurring during that period. Bernice Johnson testified that she awoke at approximately midnight, after being struck with a stick wielded by appellant. Doris Driver awoke at approximately the same time,[2] and noticed that Jerry DeMarrias, who was lying next to her in a bed, felt cold. She informed the others that Jerry was hurt. Appellant arranged to contact the police and requested an ambulance. The sheriff and county coroner came to the scene at approximately 1:45 A.M. on December 7th. After determining that Jerry was dead, the sheriff arrested appellant. According to a pathologist who later examined the body of the victim, a stab wound in the heart had produced death. The coroner's examination revealed that the victim had suffered slight cuts around the nose and upper lip plus the loss of a tooth.

Louisa Johnson discovered a knife blade on the bed where the victim was found, but no handle was found on the bed or anywhere else in the house. The results of a laboratory examination showed the presence of human blood on the knife blade, but the amount was insufficient to establish blood groupings.

In order to tie Peter DeMarrias to the homicide, the prosecution introduced evidence of three statements he

---

3) Did the trial court commit plain error in failing to instruct the jury that a prior manslaughter conviction could not be considered in passing upon appellant's intent.

4) Was appellant denied effective assistance of counsel? Here, appellant argues that his counsel improperly advised him to plead not guilty to the original manslaughter charge.

2. Doris Driver later complained that appellant also had struck her with a stick some time during the evening. The counts in the indictment charging DeMarrias with assault with a dangerous weapon related to the complaints of Doris Driver and Bernice Johnson.

Appellant contends that the trial court erred in refusing to sever these assault charges. We find no error in the joinder of the murder charge with the assault charges. Since all charges emanated from a sequence of events occurring on one particular evening, they were sufficiently connected to justify a joinder under the plain wording of Fed.R.Crim.P. 8(a). See United States v. Leach, 429 F.2d 956, 960 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971), and cases cited therein.

made following the homicide. Louisa Johnson testified to the first statement. She said that, at shortly after midnight, she entered the room occupied by the two men and two women and asked what had happened. She heard appellant respond: "Keep still or I will hit you, too." Doris Driver testified to the second statement. While she and appellant were enroute to meet the sheriff, appellant said, "I hope Jerry isn't dead. If he is, I have to go back to Sandstone, Minnesota, prison." Finally, the sheriff testified that, on the morning of December 7th while taking a breakfast tray to appellant's cell, he heard appellant say: "I killed my brother. I killed my brother." [3]

The record provides little indication of the circumstances surrounding Jerry's death. Doris Driver, upon inquiry of the sheriff on the night of the incident, stated that there had been fighting between appellant and Jerry.[4] Testifying in his own defense, appellant recalled that, after much drinking and singing, Jerry began to criticize appellant's singing abilities and approached him from the rear. Appellant testified that he had blacked out at that point.

■ To sustain the murder conviction, the government argues that, given the admissions of appellant, the jury could find that he caused the victim's death. We accept this premise. The government further argues that malice, an essential element of second degree murder, may be inferred from the collateral circumstances showing that the victim was found lying in a bed, that appellant assaulted Doris Driver and Bernice Johnson with a stick, and that appellant made a threat to strike his mother. This argument falls because the government failed to establish the time of the homicide. The record shows that several hours elapsed between nightfall, when the parties fell asleep or passed out, and midnight, when the cold body of the victim was discovered. Since the government completely failed to connect any of the above cited circumstances to the time of the homicide, those circumstances do not support an inference of malice.

■ Other evidence in the case suggests that Peter and Jerry DeMarrias, while in a drunken stupor, argued and fought prior to Jerry's death. In mentioning this evidence, which is partially derived from appellant's own testimony, we do not imply that the jury was bound to accept it as true. But without it, we

---

3. Appellant contends that this admission should have been excluded under the McNabb-Mallory rule (McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957)). Apart from a bare allegation that he was placed in state custody under a "working arrangement" between state and federal authorities, and thus deprived of an early appearance before a federal magistrate as is required by Fed.R.Crim.P. 5(a), appellant presented no evidence to support this contention. Under these circumstances the trial court properly permitted the introduction of the sheriff's testimony. See Tucker v. United States, 375 F.2d 363 (8th Cir.), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967); Young v. United States, 344 F.2d 1006 (8th Cir.), cert. denied, 382 U.S. 867, 86 S.Ct. 138, 15 L.Ed.2d 105 (1965).

4. The sheriff's testimony in this regard consisted essentially of the following:
    Q And as part of your investigation did you establish the happenings of that particular day, and what took place?
    A I did what I probably could— everything was a little bit incoherent when I first got out there that night and I tried to establish a few of the basic things that happened. Doris Driver seemed to be the one in the best shape, the one that could speak the best, and so forth.
        . . .
    Q Did you conclude after you arrived at the scene and after your subsequent visit to the scene at the Louisa Johnson house that there was ever any evidence of any fighting going on between Jerry and the defendant, Peter DeMarrias?
    A From talking to Doris Driver, this is what she told me, that there had been a fight between those two.
    [Tr. 131–32]

find no motivation for the murder, and with it, the crime can at best be explained as voluntary manslaughter. In short, the case completely lacks evidence establishing that appellant perpetrated the killing with the malice aforethought necessary to constitute second degree murder. We therefore set that conviction aside.

■ We believe, however, that the evidence is sufficient to justify a conviction for the lesser included offense of voluntary manslaughter. *See* 18 U.S.C. § 1112.[5] The jury was instructed on the elements of manslaughter, and implicit in its finding of guilt on the second degree murder charge is a finding of guilt on the manslaughter charge. In a line of cases presenting similar circumstances, the District of Columbia Circuit has adopted a practice of remanding the case to the district court for resentencing on the lesser charge under the authority of 28 U.S.C. § 2106.[6] *See, e.g.,* Hemphill v. United States, 131 U.S.App. D.C. 46, 402 F.2d 187 (1968); Austin v. United States, 127 U.S.App.D.C. 180, 382 F.2d 129 (1967); *cf.* United States v. Comer, 137 U.S.App.D.C. 214, 421 F. 2d 1149 (1970). *See also* United States v. Linnier, 125 F. 83 (C.C.D.Neb.1903).

We consider this approach appropriate here, particularly since none of the alleged errors would affect the validity of a manslaughter conviction. Under these circumstances, we direct a remand for resentencing on the voluntary manslaughter charge as an appropriate means to accomplish substantial justice.

Examination of these proceedings by two panels of this court has revealed patent flaws. Appellant, a near destitute Indian, was found guilty of second degree murder and sentenced to life imprisonment although no adequate proof to support that charge was adduced at trial. Additionally, the failure of his trial counsel to afford him an appeal would have produced a grave injustice were it not for the availability of post-conviction relief under 28 U.S.C. § 2255. This case demonstrates the value and necessity of post-conviction review. Injustices attributable to human error can occur notwithstanding the many safeguards afforded an accused through trial and direct appeal procedures.

Reversed and remanded for further proceedings in accordance with this opinion.

---

5. Section 1112 provides in part:
(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
Voluntary—Upon a sudden quarrel or heat of passion. . . .

6. Section 2106 provides:
The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.