326 A.2d 393
**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles VAUGHN, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 8, 1973.

Decided Oct. 16, 1974.

36

Harry J. Greenstein, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

The appellant, Charles Vaughn, Jr., pleaded guilty to murder subsequent to a plea bargain in which it was agreed that the crime would rise no higher than murder of the second degree and that the prosecution would recommend a maximum sentence, for whatever verdict, of not less than four nor more than twelve years imprisonment. Following a degree of guilt hearing, the trial court found the appellant guilty of murder in the second degree and imposed the recommended sentence. This appeal followed in which the only issue raised is whether the trial court erred in accepting appellant's guilty plea.

The appellant concedes that the trial court "engaged in an extensive formal colloquy with the [appellant] as to his understanding of his plea of guilty and as to whether it was being made voluntarily and intelligently." That colloquy is a matter of record. Three questions, however, are raised about the acceptance of the guilty plea.

Appellant first argues that his guilty plea to murder was inconsistent with the established facts. It is true that a guilty plea should not be accepted if the facts do not support the plea.

"We think it is logical and correct that if a defendant pleads guilty to a criminal charge, and in the next breath contravenes the plea by asserting facts which, if true, would establish that he is not guilty, then his guilty plea is of no effect and should be rejected. For on its face, such a situation would show that the plea was not entered with a complete comprehension of its impact."

*Commonwealth v. Roundtree*, 440 Pa. 199, 202, 269 A. 2d 709, 711 (1970).

■■ In this case, the appellant argues that his plea was inconsistent with the fact that he did not inflict the fatal stab wound. One need not, however, inflict the fatal blow, to be guilty of murder. *See Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733 (1953). Appellant's participation in the events immediately preceding the stabbing was sufficient to establish his guilt even if he did not inflict the fatal blow. The testimony at the trial, as summarized by the appellant, is as follows:

"About 10:00 P.M., on February 23, 1972 the defendant was walking on 17th Street in the City of Philadelphia when he was attacked by a group of boys who identified themselves as the GTO gang. After being questioned as to his gang affiliation, and denying any, defendant was inflicted with a small stab wound of his side. He proceeded to the home of a friend, Freddy Bright, 28 years of age, at 1719 W. Berks Street. There he informed Freddy and the other occupants, Robert Hendricks, 14 years of age, Samuel Bullock, cousin of Hendricks, 16 years old, Shirley Bullock, 14, and Leatrice Moore, 18, what had happened to him. Some 20 minutes later, at Hendricks' suggestion that they go out and try to find the four 'dudes' who had stabbed the defendant, Robert Hendricks and Samuel Bullock armed themselves with

butcher knives taken from the kitchen of the apartment. Defendant fearing to go outside alone followed the two out. He had a small paring knife in his possession. They proceeded to 17th and Monument Streets where they encountered an unidentified negro male. Hendricks asked the boy if he belonged to the GTO gang. The defendant stated that he told Hendricks to 'Leave the boy alone,' which they did. According to the defendant, a few seconds later Hendricks stopped another boy, the victim in this case subsequently identified as Thomas C. McAllister, 15, a complete stranger to the parties involved, and asked him what gang he belonged to. At this point Samuel Bullock is stated to have abandoned his participation in the project, started back to the apartment on Berks Street and, when about one-half block away, saw both Hendricks and the defendant swing at the deceased. A short while after Bullock returned to the apartment, Hendricks and the defendant came in. The detective testified that the defendant told him that he had not stabbed the boy, but that Hendricks had stabbed him and was bragging that he had 'got a homicide.' Both girls are said to have stated that both Hendricks and the defendant had knives. Shirley Bullock stated that she saw blood on the knife of Hendricks but that there was no blood on the defendant's knife. Detective Lyons testified that his examination of the body of the victim disclosed one stab wound of the chest and the Report of the Medical Examiner stated that the cause of death was a stab wound of the chest."

■ The above evidence and the reasonable inferences arising therefrom were sufficient to establish that the appellant was guilty of murder even though another struck the fatal blow. When there is evidence that one, who has not struck the fatal blow, has, nonetheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of

the crime and, thus, may be held responsible as an accomplice to another's acts and the consequences of those acts. *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733 (1953). "The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all." *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937). We thus, cannot agree with the appellant's contention that facts were asserted at the time of the guilty plea which were inconsistent with that plea. *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A.2d 709 (1970), cited by appellant, is therefore not applicable to this case.

■ Appellant next argues he was not properly advised by his attorney. This claim is based on the following portion of the record colloquy:

"THE COURT: Are you satisfied with the service of your lawyer, Mr. Coppolino, up to this point?

THE DEFENDANT: Yes, Yes, I am.

THE COURT: You have talked this matter over with him completely?

THE DEFENDANT: Yes.

THE COURT: You told him what you know about the case?

THE DEFENDANT: Yes.

THE COURT: And he advised you concerning that?

THE DEFENDANT: *No.*

THE COURT: He never advised you?

THE DEFENDANT: Advised me?

THE COURT: Has he advised you? Has he advised you what he thought might happen, this way or that way?

THE DEFENDANT: (No response)"

(Emphasis added).

The above portion of the colloquy, which is quoted by the appellant, however, must be viewed in the context of that which immediately follows:

"THE COURT: Maybe you could ask him better, because you know what you did. You may ask him.

[DEFENSE COUNSEL]: Did I explain to you the difference of what may occur if you are found guilty of first degree murder, second degree murder, voluntary manslaughter, and the possibilities of your being found not guilty?

THE DEFENDANT: Yes, you have.

[DEFENSE COUNSEL]: And I have discussed with you the evidence that I have uncovered as to the facts in this case?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And told you the possibilities of the matter, of what you could expect if you went to trial with the case?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: And advised you as to what I felt would be the best method for you in this matter?

THE DEFENDANT: Yes.

THE COURT: And are you satisfied with your attorney's advice?

THE DEFENDANT: Yes.

THE COURT: And it is your decision to do what you are doing now?

THE DEFENDANT: Yes."

Moreover, a reading of the entire colloquy, which appellant has correctly described as extensive, leaves no doubt that the appellant was properly and fully advised.

██ The last issue raised is whether the appellant was "intellectually capable of comprehending the significance of his plea of guilty." A plea of guilty must be made with an understanding of the nature of the

charges, the rights to which one is entitled, and the consequences of waiving those rights by the entering of a guilty plea. *Commonwealth v. Enty*, 442 Pa. 39, 271 A. 2d 926, cert. denied, 402 U.S. 913, 91 S.Ct. 1396, 28 L. Ed.2d 656 (1971). Although there is evidence in the record that the appellant, who went to the eighth grade, was poorly educated and was described in a pre-sentence psychiatric evaluation report as "a schizoid personality disorder with a dissocial life style," a review of the extensive colloquy conducted at the time of the plea satisfies us that the trial court properly concluded that the appellant understood the nature of the charges, the plea proceedings being conducted, his rights and the consequences of waiving his rights by entering the guilty plea. The appellant's answers during the colloquy were responsive and intelligent. The trial court, after observing the appellant's demeanor, disposition, and ability to respond to questions, specifically concluded that the appellant was knowingly and intelligently entering his plea of guilty. We find no error in that conclusion.

Judgment of sentence affirmed.