341 A.2d 101
**COMMONWEALTH of Pennsylvania**
v.
**Robert HAMPTON, a/k/a, Robert Smith, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1974.

Decided July 7, 1975.

———◆———

A. Harry Levitan, Herman Weiner, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Judy Dean, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant was convicted by a jury of murder in the first degree. His post-trial motions were denied and he was sentenced to life imprisonment. He now appeals from that judgment of sentence.

The appellant asserts two grounds for reversal: that the evidence was insufficient to support a finding of murder in the first degree, and that he was denied the effective assistance of trial counsel.

■■ The evidence, viewed as it must be in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Long,* 460 Pa. 461, 463, 333 A.2d 865, 866 (1975), *Commonwealth v. Rife,* 454 Pa. 506, 509, 312 A.2d 406 (1973), *Commonwealth v. Rankin,* 441 Pa. 401, 404, 272 A.2d 886 (1971), established the following: On the evening of March 1, 1972, the defendant was sitting with his wife in Mr. Chip's Bar located on Columbia Avenue in the City of Philadelphia. They were soon joined by another couple, James Robinson and his wife, Dolores. The Robinsons were looking for Henry Hampton, the de-

fendant's brother, who earlier that day had sold the Robinsons six bags of heroin. After sampling the heroin, the Robinsons had concluded that it was of poor quality and determined to recover their money from Henry.

Not finding Henry in the bar, and knowing Robert Hampton to be Henry's brother, Robinson demanded that Robert refund the purchase price. The defendant replied that he would give Robinson the money after he, Robert, had sold some more drugs. After the Robinsons had been waiting for several hours, an argument broke out between the Robinsons and the Hamptons. The defendant's wife at one point swung at Robinson with a glass in her hand, but missed. Robinson then asked Robert Hampton to calm his wife down; Hampton replied that he couldn't control her; Robinson again demanded a return of his money, and a struggle then erupted between the two men.

During the course of this fight, Robinson knocked Hampton over several bar stools and onto the floor. Regaining his feet, Hampton thereupon vaulted the bar, grabbed a gun out of his wife's pocketbook, (which she had earlier given the bartender to place behind the bar) and aimed it at Robinson. Dolores Robinson jumped in front of her husband and begged Hampton not to shoot him. At this moment the defendant's brother Henry entered the barroom and promptly jumped on Robinson's back. Robinson, a man of considerable strength and size, was able to exit the barroom even with Henry Hampton on his back. Once outside the barroom, he shook free of Henry, ran across the street and down Columbia Avenue.

The defendant, his wife, Mrs. Robinson and several other bar patrons, including one Frank Miller, followed Robinson out of the bar. Upon reaching the street, the defendant aimed the gun at the fleeing Robinson, but again did not shoot, apparently because of the importunities of Mrs. Robinson. Miller then said to the defendant,

"Give me the gun. I'll show you how it's done." According to Mrs. Robinson's testimony at trial, the defendant thereupon "reached over and gave him [Miller] the gun." Thus armed, Miller ran in pursuit of Robinson, firing two shots at him. One bullet struck the victim in the head, killing him instantly.

Appellant has made two arguments in regard to his claim of insufficiency. First, he contends that Mrs. Robinson's testimony as to the manner in which Miller obtained the gun from the defendant could not be reasonably believed because it was contrary to a portion of her testimony at the preliminary hearing. We are unable to say, as a matter of law, that her testimony was so inherently incredible that it could not be believed.

■ The appellant's counsel, for the purpose of impeachment, was permitted to read into the record portions of Mrs. Robinson's testimony at the preliminary hearing. She had there stated that Miller had "snatched" the gun from the appellant's hand, an account which the defendant himself gave at trial. The jury thus had before it two conflicting versions as to how Miller had obtained the gun from the defendant. These inconsistencies went to the issue of Dolores Robinson's credibility, an issue for the jury, after being properly charged, to pass on. *Long, supra; Commonwealth v. Karchella,* 449 Pa. 270, 273, 296 A.2d 732 (1972); *Commonwealth v. Harris,* 444 Pa. 515, 281 A.2d 879 (1971). See also *Commonwealth v. Rankin,* 441 Pa. 401, 404, 272 A.2d 886 (1971). The court's charge, which is not challenged, put the matter to the jury squarely and adequately. By its verdict, the jury obviously chose to believe that the defendant voluntarily gave the gun to Miller and as a consequence was guilty of murder in the first degree as an aider and abettor.

Appellant further claims that even if Mrs. Robinson's testimony is to be believed, the evidence showed that the killing was in "hot blood"; or, alternatively, did not rise

any higher than murder in the second degree. Our scope of review in passing on such claims is well-settled: " 'the test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' " *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). See also *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973) ; *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). We are thus not to act as fact-finders ourselves, but to determine whether there is sufficient support in the record for the jury's verdict. Measured by this standard, we must conclude that there is.

The jury was properly instructed on the degrees of murder and on the requirements for voluntary manslaughter. Based upon the evidence before it, the jury could well have concluded that the defendant in handing the gun to Miller possessed both the malice and intention to kill which is necessary for murder in the first degree. Likewise, the jury could have decided that the appellant's passion, engendered by Robinson's striking of him, had had ample time to cool, thus negating one of the essential requirements for voluntary manslaughter. See *Commonwealth v. McCusker*, 448 Pa. 382, 390, 292 A.2d 286 (1972). Under these circumstances, we will not disturb the jury's verdict.

The next ground for reversal urged by the appellant is that he was denied the effective assistance of counsel at trial.[1] Essentially, appellant points to three areas of ineffectiveness. The first is lack of sufficient time to prepare for trial. This argument is without merit. Trial counsel was appointed on February 26, 1973, after appellant's first appointed counsel had suffered a

1. The appellant is represented on appeal by the same counsel as he had at trial.

heart attack. Trial was originally scheduled for March 27, 1973, but appellant's request for a ten day continuance was granted and the trial did not actually commence until April 6, 1973. This was ample time to prepare a case such as this, where the only real issue in dispute was the manner in which the actual shooter obtained the murder weapon from the defendant.

■ The next reason given to show ineffectiveness of counsel is that trial counsel was unaware of plea bargain negotiations which had taken place between prior defense counsel and the district attorney's office. It is argued that had trial counsel been aware of the plea bargain which defendant had purportedly agreed to, he would have been obliged to consult with his client concerning it, and might have seen that it was carried out.

This contention hardly adds up to a claim of ineffective counsel in the constitutional sense, and in any case is not supported by the record. A hearing was held on this claim at the time of appellant's sentencing. At that hearing, appellant's former counsel testified that the plea bargain[2] offered by an assistant district attorney had been agreed to by the defendant. The assistant district attorney involved, however, denied that Hampton ever accepted a plea bargain, although both his own counsel and the assistant district attorney had strongly urged that he do so. The assistant further testified that a plea bargain had again been offered the defendant shortly before trial and that appellant's trial counsel was in fact present on that occasion. The trial court, in rejecting appellant's post-trial motions, concluded that the appellant had personally rejected all "deals", including an offer by the Commonwealth to certify that the homicide

---

2. The plea bargain offered by the district attorney, apparently, was that in exchange for the appellant's plea of guilty and the giving of testimony at Miller's trial, the prosecution would certify that the homicide rose no higher than murder in the second degree and would recommend a sentence of from one to ten years imprisonment.

rose no higher than second degree murder in exchange for a waiver of a jury trial. As noted by that court, in its opinion, appellant's decisions in this regard were "motivated, no doubt, by the not unreasonable possibility that he would be completely exonerated." Since it was the appellant who, against the strenuous advice of his own previous counsel and that of the prosecutor, chose to proceed to a jury trial, we fail to see how trial counsel's lack of knowledge of the plea negotiations, assuming there was such lack, rendered his representation inadequate in any respect.

The third aspect of appellant's claim of ineffectiveness is based on an alleged misrepresentation by the district attorney's office that there were no notes of testimony of the preliminary hearing. Such notes did in fact exist, but counsel did not have them prior to the questioning of Mrs. Robinson, and so was not able to cross-examine Mrs. Robinson effectively as to any inconsistencies between her testimony at the preliminary hearing and her testimony at trial.

We note preliminarily that there is nothing in the record to substantiate appellant's claim of misrepresentations by the district attorney's office. Furthermore, it has been held that the inability to obtain a transcript of a preliminary hearing does not, *per se*, constitute a denial of due process. *Commonwealth v. Minifield*, 225 Pa.Super. 149, 310 A.2d 366 (1973). See also *United States v. Carella*, 411 F.2d 729 (2d Cir. 1969) *cert. denied sub nom., Erhart v. United States*, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969). But see *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In some instances, however, such a transcript may be essential for effective trial preparation. See *Britt v. North Carolina*, 404 U.S. 226, 232, 92 S.Ct. 431, 30 L.Ed.2d 400, 406 (1971) (dissenting opinion of Douglas, J.).

In the case at bar it does not appear that the inability to procure a transcript prior to trial in fact resulted in prejudice to the defendant. Appellant's counsel at trial was apparently aware of the substance of Mrs. Robinson's testimony at the preliminary hearing, for on cross-examination he asked her if she had then testified that Miller had grabbed the gun from the defendant's hands. Mrs. Robinson denied having so testified, and counsel chose not to pursue the matter at that point. The transcript was in fact obtained later in the trial, and, as noted above, counsel read into the record for impeachment purposes relevant portions of Dolores Robinson's testimony at the earlier hearing. Thus the same purpose was achieved as could have been accomplished had the transcript been available earlier. Under these circumstances, there was no prejudice and we cannot conclude that counsel's representation was rendered inadequate in this regard.

Judgment of sentence affirmed.