412 A.2d 580

**COMMONWEALTH of Pennsylvania**

v.

**William David BACHERT, Appellant.**

Superior Court of Pennsylvania.

Submitted July 16, 1979.

Filed Oct. 19, 1979.

Reargument Denied Jan. 16, 1980.

Petitions for Allowance of Appeal Granted April 29, 1980.

74

Patrick J. Flannery, Assistant Public Defender, Wilkes-Barre, for appellant.

Chester B. Muroski, District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Justice:

Appellant, William Bachert, was convicted by a jury of first degree murder, criminal conspiracy, theft by unlawful taking, kidnapping and robbery, with the jury recommending a life sentence on the murder conviction. Five issues are raised for our consideration, the first of which concerns the sufficiency of the evidence to support the murder verdict.

> To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978).

> *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

Appellant and his accomplice, Charles Weber, spent much of February 1, 1977 drinking various alcoholic beverages near Pottsville. Early in the evening, Weber's van in which both men were riding apparently either broke down or was parked along side the northbound lane of Route 61 near the Frackville entrance to Interstate Route 81. A passing motorist saw the van and two men, one of whom she identified as Weber, as she passed them on Route 61 shortly after 6:30 p. m. About 6:45 p. m., the victim—Thomas R. Welsh—left his Port Carbon home. The victim drove past appellant and Weber on Route 61 and either offered them a ride or was stopped by them. Appellant and Weber forced Welsh to

---

* Justice ROBERT N. C. NIX, Jr., of the Supreme Court of Pennsylvania, and Judge I. MARTIN WEKSELMAN, of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

drive onto Interstate 81 North and exit forty-one miles later on the Cross-Valley Expressway near Nanticoke. At 8 p. m., two men driving on the expressway saw the victim in the opposite lane clench his chest trying to walk, stagger, fall to one knee and hold his stomach. By the time they had turned their car around, the victim had crossed the highway, collapsed in a lane of traffic, and had been struck and dragged several feet by a car. At 8:20 a volunteer ambulance squad arrived and took the victim to the hospital where he died at 8:40 p. m.

Weber and the appellant spent the late evening of February 1 drinking in a bar in Nanticoke with four other men. At about 1:30 a. m. on February 2, appellant, Weber, and the four men left the bar and drove to the "strippings" outside Nanticoke where they drank beer and smoked marijuana in the van of one of the new acquaintances. Weber showed the men his pistol and appellant twice bragged about shooting and killing someone earlier that evening. Specifically, appellant stated "we killed a guy" or "we shot a guy." These statements were confirmed by all four men at trial. Weber removed the CB radio from the victim's car, sold it to one of the men, and then crashed the car against and around the strippings' banks. All six men then left the area looking for another car to steal and ended up in Wilkes-Barre where appellant, Weber and Stanley Wilushewski, one of the four men, were dropped off. These three were arrested in Wilkes-Barre after the driver of the cab they were riding in told police that Weber was armed.

During the ride to police headquarters in a police van, appellant attempted to persuade Wilushewski to help him cover up the evening's earlier events. Appellant was quoted as saying: "I hope you know we are both in trouble now, so if you want to stick up for yourself or if you want to help us out because we stole a car tonight and we shot a guy, we wasted a guy." When asked what he meant by the term "wasted a guy", the appellant responded "we shot a man." Appellant then explained that he and Weber had been hitchhiking, received a ride from the victim, compelled him

to drive north on Interstate 81, ordered him to take an exit, told him to get out of the car, and then Weber shot him. Wilushewski relayed this entire conversation to the police when he was released from the police van.

The exact cause of death was established by Coroner Dr. George Hudock who testified that the victim "died due to shock due to the loss of blood, mainly due to the gunshot wound of the chest," but also due to "lost blood when he was shot in the arm [and] shot in the left buttock." Dr. Hudock further testified that although the victim had been dragged by a car causing lacerations and abrasions to the victim's face, chest, arms, and legs, these wounds were insufficient to cause death. He also testified that there was nothing to indicate that the wheels of the car had contacted with the victim's body because there were "no crushing injuries to the body." He concluded by stating unequivocally that the victim died from the gunshot in his chest.

A state trooper, qualified as a small arms expert, testified that based on various ballistics tests Weber's gun was the weapon used to shoot the victim.

■ Appellant attacks the sufficiency of the evidence from two standpoints. First, appellant contends that he cannot be convicted of first degree murder because at most, he was an accomplice and did not personally shoot the victim. The law of Pennsylvania is settled that one may be guilty of first degree murder even though one does not perform the immediate act resulting in death. *Commonwealth v. Smith*, 480 Pa. 524, 391 A.2d 1009 (1978). In *Commonwealth v. Vaughn*, 459 Pa. 35, 39–40, 326 A.2d 393, 395 (1974), the Supreme Court held:

The above evidence and the reasonable inferences arising therefrom were sufficient to establish that the appellant was guilty of murder even though another struck the fatal blow. When there is evidence that one, who has not struck the fatal blow, has, nonetheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime and, thus, may be held responsible as an accomplice to anoth-

er's acts and the consequences of those acts. *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A.2d 733 (1953). "The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all." *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937).

Moreover, as noted in *Commonwealth v. Cox*, 466 Pa. 582, 586, 353 A.2d 844, 846, (1976):

> . . . the Commonwealth was not required to establish that appellant was part of the joint effort to cause the death of . . . the victim by direct evidence. This burden may be sustained by means of wholly circumstantial evidence.

Thus, appellant's argument that he could not be convicted of murder of the first degree because he did not inflict the fatal wound is clearly not the law and need not detain us further. *Commonwealth v. Smith, supra.* Additionally, there is no question that the evidence would provide a basis for finding that appellant had criminal responsibility for death of the victim in this case. *Commonwealth v. Cox, supra; Commonwealth v. Vaughn, supra.* There was ample basis for finding that appellant participated in the criminal design to kidnap and rob the deceased and also to take his motor vehicle. Since the death resulted from this criminal scheme, appellant could properly have been found guilty of murder of the second degree (felony murder) or murder of the third degree.[1] The serious question raised is whether the evidence supports a finding that the shared intent specifically included the deliberate, willful and premeditated killing of the victim. *Commonwealth v. Smith, supra.*

■■■■ All theories of vicarious responsibility for criminal conduct require the existence of a shared criminal intent.

1. Under the instant facts where appellant participated in an armed robbery and forcible kidnapping of the victim, it would be proper for a jury to infer that he intended to expose the victim to serious bodily harm.

The nexus which renders all members of a criminal conspiracy responsible for the acts of any of it's members is the unlawful agreement. *Commonwealth v. Cox, supra; Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A.2d 750 (1963); *Commonwealth v. Neff*, 407 Pa. 1, 179 A.2d 630 (1962). Since first degree murder requires the existence of a specific intent to take life, the evidence must show that the shared intent included the design to take the life of the victim. In this case, that element is missing and we are constrained to conclude that the Commonwealth failed to support the verdict of murder of the first degree.

The deficiency of the Commonwealth's evidence in this case can readily be seen when it is compared with the factual situation in *Commonwealth v. Smith, supra.* In *Smith* the Supreme Court sustained a finding of murder of the first degree, indicating that the evidence provided a basis for the jury to find that appellant had formed a specific intent to assist in the taking of the life of the deceased. Smith armed himself and joined a group of men for the express purpose of seeking out the victim and shooting him. He heard a member of his group state, "Who do I shoot." Smith himself stated, "Which one is Bruce?" (the victim), "Where is Bruce?" During the actual shooting of the victim, appellant had his weapon drawn and in fact discharged it several times. From those facts the Supreme Court concluded that Smith and his companions intended at the outset of the encounter to kill Bruce Fisher when they found him that evening.

*Commonwealth v. Hampton*, 462 Pa. 322, 341 A.2d 101 (1975) also is relevant. There the defendant twice aimed a gun at the victim and failed to shoot. He then gave the weapon to a cohort who said "Give me the gun. I'll show you how its done." 462 Pa. at 326, 341 A.2d at 103. This person then shot the victim to death. A jury convicted Hampton of first degree murder and the Supreme Court affirmed after finding that Hampton had exhibited the requisite intent to kill the victim.

In contrast, while there is evidence that instant appellant shared the intent to rob and to kidnap the victim and subsequently to take his vehicle, there is no showing that appellant and his co-defendant shared the intent to take the life of the victim. Appellant's statements and actions do not throw any light on his intent at the time Weber shot the victim. Appellant's statements that "we killed a guy" and that they had "wasted" the victim have no bearing whatsoever on the issue of whether appellant had formed the requisite intent to kill the victim *at the time of the killing* by Weber. We therefore hold that the evidence was in fact insufficient to establish first degree murder and that the appellant must be discharged as to that charge. We are satisfied, however, that there was more than sufficient evidence to support the other verdicts of guilt.

Appellant's second issue concerns a request for a change of venue. During the voir dire appellant's counsel thrice asked for a change of venue and was denied his request each time. These motions were controlled by *Commonwealth v. Rolison*, 473 Pa. 261, 269, 374 A.2d 509, 512 (1977), where the Court held that once voir dire has begun, "[a] defendant may have venue changed only if he can show actual prejudice in the empanelling of the jury." The *Rolison* court held that a change of venue was not needed simply because there was pre-trial publicity concerning the trial of Rolison's co-defendant one month earlier. It further held that as long as a juror is able to lay aside his preconceptions about the case, he can be an acceptable juror. In the instant case, as in *Rolison*, all fourteen jurors and alternates selected stated that they had no preconceived opinion as to appellant's guilt or innocence. Since appellant has failed to show any actual prejudice in the empanelling of the jury, this argument is without merit.

Appellant also contends that the trial court erred in "restricting" the participation of an attorney appointed by the court to assist his primary court-appointed counsel. The

appellant had requested the trial court to appoint an additional counsel in order to achieve "parity" with the prosecution which consisted of the district attorney and an assistant district attorney. The court acquiesced as an accommodation to the appellant but specified that only the chief counsel for each side could examine witnesses or make objections. Appellant argues that this limitation nullified the effect intended by the request for additional counsel. However, appellant had no right to the appointment of assistant counsel in the first place, nor has he pointed to any prejudice arising from the limitation placed on the assistant counsel since he in fact did participate in the proceedings by making motions and arguments before the court. While a defendant is entitled to a fair, complete and impartial trial, *Commonwealth v. Phelan*, 427 Pa. 265, 234 A.2d 540 (1967), the general conduct of that trial is committed to the broad discretion of the trial judge. *Commonwealth v. Warner*, 209 Pa.Super. 215, 225 A.2d 98 (1966). Where, as here, the limitations on participation of assistant counsel were reasonably related to the need to assure an orderly and impartial trial, such limitations were not an abuse of the trial court's discretion.

■ Appellant further contends that the reasons set forth by the sentencing judge were insufficient to justify the sentences he received. Appellant was sentenced to life imprisonment for first degree murder, 10 to 20 years imprisonment for kidnapping to run consecutively to the murder sentence, 10 to 20 years imprisonment for robbery to run consecutively to the kidnapping sentence, and 5 to 10 years for criminal conspiracy to run concurrently with the robbery sentence. The court set forth the following reasons for its decision to impose these sentences:

First of all, the Court took into consideration the gravity of the offenses; (2) punishment; (3) deterrents; (4) protection of the public and society; (5) preventive [sic] of further crime; (6) rehabilitative need of defendant.

Appellant contends that these reasons fail to meet the standards established in *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

The *Riggins* Court held that the trial court should place on the record its reasons for imposing the particular sentence chosen. The Court believed that absent such a statement of reasons, the record would not reveal whether the trial court had considered the legislatively mandated factors set forth in the Sentencing Code, Act of December 30, 1974, P.L. 1052, No. 345, *as amended*, 18 Pa.C.S.A. §§ 1301 *et seq.* The *Riggins* court recognized that "[t]raditionally, appellate courts have left sentences undisturbed on appeal because of the view that the trial court is in a far better position to weigh the factors involved in sentencing determinations." 474 Pa. at 123, 377 A.2d at 144.

Although the reasons set forth by the trial court for the sentences imposed were devoid of explication, they still may be valid. In *Commonwealth v. Wareham*, 259 Pa.Super. 527, 393 A.2d 951 (1978), the court stated:

It is better practice for the court to include in its statement of reasons for the sentence some reference to the guidelines specified in the Sentencing Code, with some explanation of how consideration of those guidelines affected the determination of sentence. *Commonwealth v. Riggins, supra.* Still, we should not hold a statement of reasons insufficient, and therefore require vacation and remand, when it is apparent that even though the court made no reference to the guidelines, it did consider and apply them.

259 Pa.Super. at 534, 393 A.2d at 954.

As suggested by the *Wareham* decision, the thrust of *Riggins* was to require the trial judge to provide a record with reference to the sentence or sentences imposed which would allow a meaningful appellate review. The major concern was that the record should reflect those factors which were considered by the court in the sentencing decision. An enumeration of those factors, as in the case at bar, permits the reviewing court to ascertain whether the decision was

based upon appropriate considerations and also permits an evaluation as to whether the listed factors justified the sentence actually imposed. Such an enumeration circumscribes the "unlimited, unstructured and irrevocable discretion" which the *Riggins* Court found offensive.[2] *Commonwealth v. Riggins, supra,* 474 Pa. at 123, 377 A.2d at 144. Although, as stated in *Wareham,* the better practice in the trial court would be to explain on the record its judgment as to how the various guidelines affected the sentencing decision, we nevertheless cannot say that *Riggins* has been violated where the sentencing court has merely listed those factors that it considered in reaching its determination.

We are also satisfied that the sentences imposed were justified under the guidelines used by the court. Although the twin 10 to 20 year consecutive sentences for kidnapping and robbery are the maximum allowable for those crimes,[3] the Sentencing Code permits the court to consider the nature and circumstances surrounding the commission of the crime in determining whether to impose a sentence of total confinement. 18 Pa.C.S.A. § 1325. Where, as here, the

2. The instant case is to be distinguished from the situation presented in *Commonwealth v. Pauze,* 265 Pa.Super. 155, 401 A.2d 848 (1979). In *Pauze* no reasons were given of record for the particular sentence imposed. Thus, faced with a challenge that the sentence was excessive, the court was forced to conclude:

> . . . this court cannot substitute the prosecution's rationale for that of the sentencing court for to do so would be pure speculation. Nor is there any indication in the record that the court even considered the appellant's background, individual characteristics, and relative culpability or prospects for rehabilitation prior to imposing sentence . . .

Id., 265 Pa.Super. at 158, 401 A.2d at 849.

The language used by the trial court in this case closely tracks the language of the Sentencing Code, and makes it clear that the sentence was arrived at based upon those factors. *See e. g.* 18 Pa.C.S.A. § 1321(b).

3. Both kidnapping and robbery are classified as felonies of the first degree. See 18 Pa.C.S.A. §§ 2901(b) (kidnapping), 3701(b) (robbery). The legislature has set the punishment of first degree felonies at imprisonment "for a term which shall be fixed by the court at not more than 20 years," 18 Pa.C.S.A. § 1103(1), or a fine not to exceed $25,000, 18 Pa.C.S.A. § 1101(1), or both, 18 Pa.C.S.A. § 1321(a).

crimes were contemporaneous with an unprovoked killing, this Court cannot state that the trial court was not warranted in imposing punishment of this nature.

 Appellant has filed a *pro se* brief with this court raising six additional arguments[4] including allegations that his court-appointed counsel were ineffective and incompetent. He was represented at trial, during the post-verdict motions, and is presently represented by the same appointed counsel.[5] In *Commonwealth v. Gardner*, 480 Pa. 7, 10, 389 A.2d 58, 59 (1978), the Supreme Court stated that:

> When an appellant raising ineffectiveness of appointed trial counsel is represented on appeal by the same counsel, he is entitled to a remand for appointment of new counsel not associated with trial counsel unless ineffective assistance of counsel is clear on the face of the record. . . . . "In such circumstances, it cannot 'be assumed that appellate counsel will provide the zealous advocacy to which an appellant is entitled.'" [Citations omitted.]

We therefore must remand the case to the trial court for the appointment of new counsel to consider appellant's charges of ineffectiveness of instant counsel and to take whatever further action may be appropriate on appellant's behalf.

Judgment of sentence of first degree murder is reversed, remaining judgments of sentence are affirmed, and the case is remanded to the trial court for a new trial on the murder indictment at which the degree of guilt may not rise higher than second degree. The lower court is further instructed to

4. Appellant argues (1) his court appointed attorneys were ineffective or incompetent, (2) he was denied his rights to act as his own defense attorney, (3) there was a conflict of interest between the two county public defenders appointed to represent him, (4) the court failed to give the second or assistant defense counsel time to prepare for trial, (5) the credibility and veracity of four witnesses were questionable because their testimony was allegedly hearsay, and (6) a state trooper was improperly permitted to testify as a ballistics expert.

5. In the brief filed in this court, appellant's counsel has denied that his representation of appellant was ineffective or incompetent.

appoint new counsel to assist appellant with his claims of ineffectiveness of former counsel.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

I respectfully dissent from the majority's conclusion that the evidence was insufficient to support the jury's finding that appellant's crime was murder in the first degree. Appellant and Charles Weber were accomplices in the kidnapping and robbing of Thomas R. Welsh. There was evidence from which a jury could find that Welsh was forced out of his vehicle along Interstate Route 81 in Luzerne County. He was then shot three times by Weber, in the arm, the left buttock, and the chest. Appellant stood by and watched. Welsh died as a result of shock and a loss of blood caused by the three gunshot wounds. Later, appellant boasted to friends that "we killed a guy." Still later, appellant attempted to obtain assistance in covering up the events of the evening because, in his words, "we stole a car tonight and we shot a guy, we wasted a guy." These statements by appellant were admissions, not only of his presence, but also of his participation in the killing. They were relevant to show a shared intent to kill at the time of the shooting. The decision in *Commonwealth v. Hampton*, 462 Pa. 322, 341 A.2d 101 (1975), if my reading of it is correct, supports fully the sufficiency of this evidence. A jury could infer from it that appellant had a fully formed intent to kill. Therefore, I would affirm the jury's finding that appellant was guilty of murder in the first degree.

I must dissent also from the majority's conclusion that the award of a new trial is a proper remedy in this case. Even if the evidence were insufficient to sustain a conviction of murder in the first degree, the remedy should not be a new trial. The killing in the instant case was malicious and occurred while appellant and his accomplice were committing crimes of kidnapping and robbery. The evidence is more than sufficient, as the majority concedes, to sustain a conviction of second degree murder. Murder in the second degree has been held to be a lesser included offense of

murder in the first degree. *Commonwealth v. Roberts*, 484 Pa. 500, 502, 399 A.2d 404, 405 (1979); *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977); *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977). Therefore, given the majority's conclusion that the evidence cannot support a finding of murder in the first degree, I believe the proper remedy would be to reduce appellant's crime to murder in the second degree.

Both state and federal courts have held that an appellate court has the power to reduce a conviction to a lesser included offense where the evidence is insufficient to support an element of the greater offense. The federal cases find authority for this power in 28 U.S.C. § 2106. See: *United States v. Swiderski*, 548 F.2d 445 (2nd Cir. 1977); *United States v. Industrial Laboratories*, 456 F.2d 908 (10th Cir. 1972); *DeMarrias v. United States*, 453 F.2d 211 (8th Cir. 1972); *Fuller v. United States*, 132 U.S.App.D.C. 264, 293, 407 F.2d 1199, 1228, n.29 (D.C.Cir.1968); *Hemphill v. United States*, 131 U.S.App.D.C. 46, 402 F.2d 187 (D.C.Cir. 1968); *Austin v. United States*, 127 U.S.App.D.C. 180, 382 F.2d 129 (D.C.Cir.1967). See also: *United States v. Ciongoli*, 358 F.2d 439 (3rd Cir. 1966). The federal statute is virtually identical to the Pennsylvania "Judicial Code", 42 Pa.C.S. § 706. The Pennsylvania statute grants appellate courts the power to "affirm, modify, vacate, set aside or reverse any order brought before it for review and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." This section is merely a restatement of prior law. See, e. g.: Act of July 31, 1970, P.L. 673, No. 223, § 504, 17 P.S. § 211.504. See also: *Commonwealth v. Sterling*, 314 Pa. 76, 78, 170 A. 258, 259 (1934).

State courts with similar statutes have reached the same result. See, e. g.: *Blake v. State*, 186 Ark. 77, 52 S.W.2d 644 (1932); *Ritchie v. State*, 243 Ind. 614, 189 N.E.2d 575 (1963); *State v. Gunn*, 89 Mont. 453, 300 P. 212 (1931); *State v.*

*Porello*, 138 Ohio St. 239, 34 N.E.2d 198 (1941); *State v. Braley*, 224 Or. 1, 355 P.2d 467 (1960); *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420 (1924). The right to reduce the grade or degree of crime has also been recognized and approved in the following decisions: *People v. Bridgehouse*, 47 Cal.2d 406, 303 P.2d 1018 (1956); *Purkhiser v. State*, 210 So.2d 448 (Fla.1968); *Commonwealth v. Williams*, 364 Mass. 145, 301 N.E.2d 683 (1973); *State v. Jackson*, 198 Minn. 111, 268 N.W. 924 (1936); *Wells v. State*, 305 So.2d 333 (Miss. 1974); *People v. Rodriguez*, 63 N.Y.A.D.2d 919, 406 N.Y.S.2d 63 (1978); *Forsha v. State*, 183 Tenn. 604, 194 S.W.2d 463 (1946).

In the instant case, a reduction in degree of appellant's crime would not prejudice appellant and would facilitate the just, efficient and final disposition of this criminal action.

In other respects, I concur with the majority. Specifically, I agree (1) that the trial court properly denied the several motions for change of venue made by appellant during voir dire examination; (2) that the trial court did not abuse its discretion by placing reasonable limitations upon participation during trial of an assistant defense counsel appointed at appellant's request to achieve "parity" with the Commonwealth; and (3) that the sentences imposed by the trial court were proper and in compliance with the requirements of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

Finally, I am constrained to agree that appellant's *pro se* averments of ineffective assistance of trial counsel cannot be decided finally from the present state of the record. This compels a remand for the appointment of new counsel.

In summary, I would not set aside appellant's conviction of murder in the first degree; and therefore, I must dissent from the award of a new trial. I concur, however, that the proceedings must be remanded for the appointment of new counsel to pursue by appropriate means the claim made by appellant that his trial counsel was ineffective.