## HUBBARD SAVARY V. STATE OF NEBRASKA.

FILED JUNE 19, 1901.　No. 11,866.

1. **Tender of Proof.** In a criminal trial, as well as civil, when to a question in direct examination an objection is interposed by the adverse party and sustained, in order to present the ruling to this court for review, there must be an offer of proof of the facts sought to be put in evidence by the question to which the answer was excluded.

2. **Expert Witness: EXHIBITS.** When physicians called as experts in a criminal trial for murder, in testifying to the manner and cause of death, refer to and use the skull of the deceased and a photograph thereof in explanation and as a part of their testimony, it is not erroneous to admit the exhibits as evidence in the case.

3. **Instruction Defining Murder in First Degree Not Erroneous.** Instructions copied in the opinion defining murder in the first degree examined, and *held*, the giving of the same was not erroneous.

4. **Not Error to Refer Jury to Instruction Formerly Given.** When a point arising in a criminal trial has been covered in an instruction to the jury, it is not error to refer to such instruction as answering an inquiry submitted by the jury during their deliberations, in place of giving another instruction on the same point, although another instruction might properly have been given.

5. **All Phases of the Case Need Not Be Embodied in One Instruction.** It is not required that all phases of the case be covered by one instruction. An instruction referring only to murder in the first degree may be given without objection when other instructions properly advise the jury as to the lesser degrees of the crime charged in the information and also the defense interposed by the plea of not guilty.

6. **Instruction on Reasonable Doubt Held Not Erroneous.** An instruction on the subject of reasonable doubt in which the jury were told, "You are not at liberty to disbelieve as jurors, if from the evidence you believe as men; your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered," *held* not erroneous.

7. **Instruction of General Application Not Erroneous.** An instruction of general application regarding the credibility of witnesses, otherwise proper and correct, is not open to objection because the defendant who testified in his own behalf was the only witness having a direct legal interest in the result of the trial.

Savary v. State.

8. **Word "Impartial" Does Not Render Instruction Erroneous.** The use of the word "impartial" in an instruction when applied to the consideration of the evidence by the jury does not render the instruction erroneous.

9. **Instruction Properly Refused.** An instruction, the substance of which is copied in the opinion, requested by the defendant, *held* properly refused.

10. **Murder: IRRESISTIBLE PASSION: COOLING TIME.** When one theory of the defense is that the homicide was committed under the impulse of irresistible passion provoked by the deceased, the true inquiry is whether the suspension of reason, if shown to exist, arising from sudden passion, continued from the time of provocation till the instant of the act producing death took place; and if from any circumstance shown in evidence it appears that the party reflected and deliberated, or if in legal presumption there was time or opportunity for cooling, the provocation can not be considered by the jury in arriving at a verdict.

11. **Evidence: MURDER IN FIRST DEGREE.** Evidence examined, and *held* sufficient to support a verdict of murder in the first degree.

12. **Statement of Juror Impeaching Verdict: STATEMENT BY THIRD PARTY: HEARSAY.** Statements of a juror after trial as to the manner of arriving at a verdict during the deliberations of the jury can not be testified to by others for the purpose of vitiating the verdict. Such testimony is incompetent as hearsay.

13. ————: UNSWORN STATEMENT INSUFFICIENT TO IMPEACH. A statement made by a juror after trial, and when not under oath, tending to impeach his verdict is insufficient to rebut and overcome the presumption arising from the record that the verdict returned under oath and assented to by the jury was the result of the deliberation of the jury on the evidence in the case.

14. **Impeachment of Verdict by Juror.** A juror can not be heard to impeach a verdict by him returned as to any matter essentially inhering in such verdict.

ERROR from the district court for Richardson county. Tried below before STULL, J. *Affirmed.*

*Clarence Gillespie* and *Edwin Falloon,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, Deputy,* for the state.

Holcomb, J.

The defendant, plaintiff in error, was informed against, tried, and by a jury found guilty of murder in the first degree, the penalty being fixed at life imprisonment. Sentence having been duly pronounced on the verdict, the cause is by proceeding in error brought to this court for review. The errors assigned and argued as grounds for a reversal of the judgment of the trial court may, for convenience, be grouped and considered in the following order: 1. Errors in the admission and rejection of evidence. 2. Errors in the instructions to the jury given and refused. 3. The evidence does not sustain the verdict. 4. Misconduct of the jury during their deliberations in arriving at a verdict.

As to the first of the grounds mentioned, complaint is made because the court, during the examination in chief of the defendant, who was a witness in his own behalf, sustained an objection interposed by the state to a question by which he was asked the reason why he struck the deceased at the time of the homicide. As no offer was made as to what the witness would testify in answer to the question, we are unable to say there is prejudicial error in the ruling complained of. The rule is, and it is applicable alike to criminal and civil trials, that when to a question in direct examination objection is interposed by the adverse party and sustained, in order to present the ruling to this court for review, there must be an offer of proof of the facts sought to be put in evidence by the question to which the answer was excluded. *Ford v. State,* 46 Nebr., 390, 394; *Mathews v. State,* 19 Nebr., 330, 338; *Denise v. City of Omaha,* 49 Nebr., 750; *Murry v. Hennessey,* 48 Nebr., 608, 613; *Smith v. Hitchcock,* 38 Nebr., 104, 110; *German Ins. Co. v. Hyman,* 34 Nebr., 704, 709.

Complaint is also made because, over the objection of the defendant, the trial court admitted in evidence as exhibits the skull of the deceased and a photograph thereof. An examination of the records discloses that these exhibits

were referred to and made use of by the physicians testifying in the case as to the manner and cause of death, and were in fact a part of the evidence of these witnesses proper and necessary to an intelligent understanding of the testimony relating to and bearing on the subject concerning which the witnesses as experts were called to testify. We find no valid objection to the introduction of the exhibits as evidence in connection with the physicians' testimony as to the manner and cause of death, and regard them as entirely competent in establishing a material element in the state's case, viz., that the blow delivered by the defendant to the deceased was the direct and proximate cause of his death. Counsel has cited no authority holding the evidence inadmissible, nor is it believed that any can be found.

With scarcely an exception, all the instructions given the jury at the request of the state are excepted to, and the giving of each is assigned as sufficient reason for the reversal of the judgment. All instructions were given either at the request of the prosecution or the defense, and we think, upon the whole, covered the issues raised in the case in a very satisfactory manner and fairly submitted the law applicable to the evidence, for the guidance of the jury in their deliberations.

Instructions 1 and 2, requested by the state and given, are vigorously assailed as an incorrect expression of the law defining murder in the first degree. They are as follows:

"1. To constitute murder in the first degree there must have been an unlawful killing done, purposely, and with deliberate and premeditated malice. If a person has actually formed the purpose maliciously to kill, and has deliberated and premeditated upon it before he performs the act, and then performs it, he is guilty of murder in the first degree, however short the time may have been between the purpose and its execution. It is not time that constitutes the distinctive difference between murder in the first degree and murder in the second degree; an un-

lawful killing, with malice, deliberation and premeditation constitutes the crime of murder in the first degree. It matters not how short the time, if the party has turned it over in his mind, and weighed and deliberated upon it.

"2. The jury are instructed that while the law requires in order to constitute murder of the first degree, that the killing shall be willful, deliberate and premeditated, still, it does not require that the willful intent, premeditation or deliberation, shall exist for any length of time before the crime is committed; it is sufficient if there was a design and determination to kill distinctly formed in the mind at any moment before or at the time the blow is struck; and in this case, if the jury believe from the evidence, beyond a reasonable doubt, that the defendant feloniously struck and killed the deceased, as charged in the information, and that before or at the time the blow was struck the defendant had formed in his mind a willful, deliberate and premeditated design or purpose to take the life of the deceased, and that the blow was struck in furtherance of that design or purpose and without any justifiable cause or legal excuse therefor, as explained in these instructions, the jury should find the defendant guilty of murder in the first degree."

It is argued that the instructions fail to distinguish between murder in the first and second degree and eliminate the elements of premeditation and deliberation. We are unable to so conclude. The instructions are substantially the same as those given in *Carleton v. State*, 43 Nebr., 373, which were approved in an opinion of the court by IRVINE, C. In the first it is said, it is true, that "It is not time that constitutes the distinction between murder in the first and second degree." It is earnestly insisted that time is required for premeditation and deliberation. While this is true, the time required may be of the shortest possible duration. The time may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed, and this is the substance of the

instructions complained of. Whether the defendant had sufficient time to premeditate and deliberate, and whether he in fact did so, was a question for the jury as triers of fact under proper instructions from the court. From an examination of both instructions it can not be said that the purpose to kill could be formed, reflected upon and turned over in the mind and the act committed at one and the same time. To constitute the crime of murder in the highest degree there must be a reflection, a turning over in the mind, a weighing and consideration of the act and the purpose formed to do it before its actual commission. The instruction could perhaps be improved and save criticism by the most exacting, by the use of language entirely free from ambiguity, fixing the time for premeditation and deliberation, even though instantaneous it may be, before the actual commission of the act on which the charge of the crime is based. In the first paragraph it is stated, in a manner leaving no room for doubt or uncertainty, that premeditation and deliberation must precede the act resulting in death; that if the party has turned the question over in his mind, weighed and deliberated upon it, it matters not how short the time. The correctness of the instruction as a legal proposition can not be questioned. In the second the jury are told that if before or at the time the blow was struck the defendant had formed in his mind a willful, deliberate and premeditated design or purpose to take the life of the deceased, and that the blow was struck in furtherance of that design, without any justifiable cause or legal excuse, his guilt of the highest degree of the crime charged would be established. It can hardly be argued, by any logical process of reasoning, that under this instruction a verdict of guilty of murder in the first degree would be justified upon the theory that the premeditation and deliberation required to be shown and the act of killing may take place simultaneously. Clearly, deliberate and premeditated malice must be found to exist before the blow was struck resulting in death.

In 1 Wharton, Criminal Law [10th ed.], section 380, it

is stated: "It is not necessary, however, that this intention should have been conceived for any particular period of time. [Citing a long list of authorities.] It is as much premeditation if it entered the mind of the guilty agent a moment before the act, as if it entered ten years before;"— citing other cases. In *Haunstine v. State*, 31 Nebr., 112, it is held in the third paragraph of the syllabus: "To warrant a conviction of murder in the first degree it is not necessary that the evidence show that the accused deliberated over the matter and formed the purpose to kill, for weeks, days, or hours before committing the crime. The law fixes no particular length of time for premeditation and deliberation as the criterion to distinguish murder in the first from the lower degree thereof, but leaves each case to be determined from the circumstances surrounding it." In paragraph sixteen of the syllabus in *Carleton v. State*, *supra*, the law is thus stated: "Where a person has actually formed the purpose maliciously to kill another, and has deliberated and premeditated upon it before committing the offense, this constitutes murder in the first degree. The length of time that intervenes between the time such purpose is formed and its execution is not material." Says MAXWELL, J., in *Milton v. State*, 6 Nebr., 136, 143: "Where a person has actually formed the purpose maliciously to kill another, and has deliberated and premeditated upon it before committing the offense, the length of time that intervenes between the time such purpose is formed and its execution is not material, as it is the formation of such purpose after deliberation and premeditation, and carrying the same into execution, that constitutes the crime of murder in the first degree." See, also, *People v. Williams*, 43 Cal., 344.

During the deliberations of the jury they returned into court and inquired as to "What constitutes a premeditated act and what length of time it would require a person to premeditate committing a deadly assault upon another person, and whether it is possible for a person to, in an instant either pick up a club and injure a person or use a

revolver in a moment whether it would be premeditated or not?" Without giving a new instruction the court instructed the jury that they would find the question answered in instruction No. 2 given at the instance of the prosecution. This is assigned as error. Having instructed the jury on the point raised by the inquiry, we observe no imperative reason for again instructing them on the same subject. While another instruction might properly have been given in relation to the same question, and in answer to the inquiry by the jury, the failure to do so, an instruction already having been given, is not prejudicially erroneous.

In the third instruction the jury were told that if they found, beyond a reasonable doubt, from the evidence, all the elements constituting murder in the first degree, to render verdict of guilty accordingly. Complaint is made because nothing is said in the instruction of the lesser degree, or justifiable homicide on the ground of self-defense. But these subjects were fully covered by other instructions, and it was proper to direct a verdict of guilty of murder in the first degree, if the facts, when found, warranted such a verdict.

An instruction is complained of in which the jury were told "You are not at liberty to disbelieve as jurors, if from the evidence you believe as men; your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered."* The writer does not regard the instruction entirely free from merited criticism, but it having for a long period of time been sanctioned by repeated decisions of this court, we do not feel justified in judicially condemning it. *Leisenberg v. State*, 60 Nebr., 628, 630.

Instruction No. 10 was of general application, and stated the law as to the credibility of witnesses. Exception is taken on the theory that the defendant being the only interested witness in the result of the case, the instruction must be taken as directly referring to and designating

*Willis v. State*, 43 Nebr., 102; *Barney v. State*, 49 Nebr., 515.

him.  We do not so regard it.  The instruction was one of approved form and applied to all witnesses in the case. The mere fact that the defendant was a witness in his own behalf and had a greater and more direct interest in the result, did not render the instruction erroneous, if otherwise it was a correct expression of the law, as we hold it is. A cautionary instruction referring directly to the defendant's interest in the result of the trial as affecting his credibility and the weight to be given to his testimony would have been altogether proper.

Complaint is also made because in an instruction defining a reasonable doubt it is said: "If, after a careful and impartial consideration of all the evidence, the jury have an abiding conviction of the guilt of the accused and are fully satisfied of the truth of the charge, then the jury are satisfied beyond a reasonable doubt."  It is insisted that the use of the word "impartial" renders the instruction erroneous.  The objection is hypercritical.  The use of the word in the connection in which it is used conveys the idea that the jury are to act impartially with no preconceived opinion or desire to find the question of fact submitted to them in favor of or against the accused.  That they are to act disinterestedly, and candidly, fairly and dispassionately investigate and consider all the evidence before them, giving to each part such weight as it is fairly entitled to, and render such a verdict as the conclusions thus reached will justify.

The other exceptions taken to the instructions given at the request of the prosecution have been considered, are not well taken and will not be further noticed.

Most, if not all the instructions thus given have heretofore been before the court for consideration and have been approved as a correct statement of the law applicable to trials where the charge, as in the case at bar, is the unlawful killing of another in such a manner as to constitute murder in the first degree.

Counsel for the defendant requested twenty-three instructions to the jury, all of which were given except six.

Error is sought to be predicated on the ruling of the court in refusing to give those requested and refused. The substance of one of the instructions refused is as follows: That when anger is shown to have existed between the parties to the killing, before there could be deliberation and premeditation growing out of the killing, the slayer should have had time for his passion to cool and to deliberate in his rational moments over his trouble before he could be convicted of murder in the first degree, if he subsequently slew the party with whom he had the trouble; and if you find from the evidence that prior to the killing, the deceased and the defendant had some difficulty, then, before the jury could find any deliberation or premeditation, they (the prosecution) must prove some act of hostility, either committed or threatened, by the defendant toward the deceased before they (the jury) could find that the act committed, by which the deceased lost his life, was committed with deliberation and premeditation. The instruction is an incorrect statement of the law. We know of no rule of law that requires proof of some act of hostility, committed or threatened, as an evidence that irresistible passion has subsided and reason resumed her sway. It may well be doubted whether the evidence on this point is sufficient to submit to the jury the question of whether the defendant acted under the impulse of passion suddenly aroused which clouded the reason and prevented rational action; but if so, the only questions were whether there existed reasonable and adequate provocation to excite the passion of the defendant and obscure and disturb his power of reasoning to the extent that he acted rashly and from passion, without due deliberation and reflection, rather than from judgment; and secondly, whether, under all the facts and circumstances as disclosed by the evidence, a reasonable time had elapsed from the time of the provocation to the instant of the killing for the passion to subside and reason resume control of the mind. The true inquiry appears to be whether the suspension of reason, if shown to exist, arising from sudden passion, continued from the

time of provocation till the very instant of the act producing death took place, and if, from any circumstances whatever shown in evidence, it appears that the party reflected and deliberated, or if in legal presumption there was time or opportunity for cooling, the provocation can not be considered by the jury in arriving at their verdict. *State v. Shelledy,* 8 Ia., 477; *May v. People,* 8 Colo., 210; *Maher v. People,* 10 Mich., 212, 222. In the case at bar, an instruction on the subject was given at the request of the defendant which substantially covered the proposition contained in the instruction refused. The instruction is as follows: "This court instructs this jury that under this information you can; and the court instructs you that it is your duty to find this defendant guilty of manslaughter if you believe from the evidence before you beyond a reasonable doubt the the fatal blow was struck unlawfully, but without malice and while the defendant was under the influence of passion and in the heat of blood produced by an adequate and reasonable provocation and before a reasonable time had elapsed for the blood to cool and reason to control. But if on the other hand you have any reasonable doubt of the guilt of this defendant it is your duty to find him not guilty."

The other instructions requested by defendant and refused are either incorrect expressions of law or the substance of the instruction refused had been covered and included in one already given, and no error was committed in the refusal to give them.

The evidence, it is contended, is insufficient to support a verdict of murder in the first degree. The homicide occurred at a railroad grading camp where deceased, defendant, and several others were engaged in the work of grading. On the evening preceding the tragedy the defendant and some others visited a neighboring village and procured intoxicating liquor, which was brought back to the camp late at night. On the next morning, Sunday, different ones were engaged in card playing, out of which grew quarreling that finally broke up the game. The de-

ceased seemed to have been the disturbing element. He was unpopular at the camp and accused almost all the others of "having it in for him," as he expressed himself. It was this sort of petty quarreling that appears to have interfered with the card playing. A short time before the homicide the deceased was in a tent with the defendant, occupied by them jointly, when the deceased upbraided the defendant for breaking up the game of cards, and asserted that he was one of several who were trying to impose upon the deceased and were not treating him right. The defendant denied that he was unfriendly to the deceased, and contended that the card game was ended to prevent quarreling. A third party, hearing the talk, came to the door of the tent and urged that the loud talking be stopped and advised the deceased to stop quarreling with the other members of the camp. The deceased passed out of the tent and, after some words with the party who had thus interrupted, went to another tent where the contractor was and stated that he was not being treated right by the other workmen and was going to leave the camp. Just then the same party who had interrupted the talk between the deceased and the defendant appeared and told the deceased to not be telling his troubles to the boss, but to come out and talk to him about them. After some words, a scuffle ensued; the deceased, being struck with a roll of tar paper, seized a stick of wood as if to strike the other party, when a third party named Shumate seized the other end of the stick, saying, "You sha'n't hit nobody with that club." While deceased and Shumate were struggling over the stick of wood the defendant came rapidly up to where they were, having on his way seized a wagon-spoke, and struck the deceased a hard blow on the side of his head, fracturing his skull and causing death. It is in evidence that, as he approached the place where the deceased and the other party were struggling over the stick of wood, he said, "he would kill the son of a bitch." It is also testified that after the blow was struck he said, "he intended to kill him"; "he meant to kill him"; "he

aimed to kill him." The defendant claims that after the conversation in the tent with the deceased heretofore mentioned the dinner bell rang and he had started to the well to.wash, when he heard the party seizing the stick of wood in the hands of the deceased say, "You sha'n't hit nobody with that club," and thinking the deceased intended to attack him, he seized the wagon-spoke and went to the place where the deceased and Shumate were for the purpose of protecting himself from the anticipated assault. There was not the slightest reason for striking the fatal blow. No one was in any immediate or apparent danger. Several others were near by, and no reasonable ground existed for serious apprehension of danger to life or of great bodily harm to any of the parties participating in the affray. The stroke was obviously without justification or excuse and was purposely and maliciously inflicted. Some possible doubt may arise in the mind of one examining the record, as to whether the homicidal act was with deliberation and premeditation on the part of the assailant; but if so, this question was fairly submitted to the jury and, as indicated by their verdict, resolved against the defendant, and it can not, we think, be said that there is not sufficient evidence to support the conclusion thus reached. The record, we are of the opinion, justified the verdict finding that all the elements necessary to consti-tute the highest degree of the crime charged have been established by the required legal proof.

We are also asked to reverse the judgment on the ground of alleged misconduct of the jury. The error claimed in this regard is based on the statements of one of the jurors claimed to have been made after the trial of the case, to the effect that during the deliberations of the jury it was agreed that a vote should be taken as to the different degrees of homicide of which the defendant might be found guilty, and the degree receiving the highest number of votes should be the one the jury would agree to in the verdict. This fact was sought to be established by the testimony of other witnesses, who testified to what one of

the jurymen had said after the verdict had been returned. The evidence, we think, was clearly incompetent as hearsay. It certainly was not primary evidence, and could not be admitted on the theory that it was in the nature of statements or admission against interest. If the evidence could be received at all, it must be by the testimony of a juror or others having knowledge of the fact testified about, and mere hearsay would, under no view of the question, be admissible. Admitting the evidence to be competent, it was clearly insufficient to overcome the evidence in the record, that the verdict was the judgment of the jury arrived at regularly and in the manner sanctioned by law. The verdict was returned in open court as the finding of all the jurors and assented to by them. They had taken an oath to faithfully and impartially try the issue raised by the plea of not guilty, and truly try and true deliverance make between the state and the accused. The presumption is they properly discharged the obligation thus assumed and that the verdict returned, after a trial in which the rights of the accused were protected and safeguarded by the observance of all the forms of law, was the deliberate judgment of the jury after mature reflection and candid investigation and consideration of the evidence. This presumption can not, and ought not, we think, be rebutted by a loose statement of one of the jurors after trial and after being relieved from the obligation of the oath he had taken, to the effect that the verdict was the result of chance and not a deliberate conclusion deduced from the evidence. Admitting the evidence introduced to be competent for the purpose of impeaching the verdict of the jury, it was clearly insufficient, and the trial court rightly so held. *Tracey v. State,* 46 Nebr., 361; *State v. Duestoe,* 1 Bay [S. Car.], 377. In no event, as it occurs to us, can a juror be permitted, either directly or indirectly, to stultify himself and impeach a verdict by him returned and assented to in the manner and on the ground attempted in the case at bar. The matters complained of inhere in the verdict. They formed a part of the delibera-

tions, method of procedure and course of reasoning by which the conclusions announced in the verdict were reached. A juror can not be heard to impeach his own verdict by showing that he reasoned from false premises or adopted an illegitimate method in reaching a conclusion. On principle, the question in the case at bar comes within the rule announced in *Harris v. State*, 24 Nebr., 803, 809, and *Coil v. State*, 62 Nebr., 15, holding that a juror can not be heard to impeach his own verdict regarding such matters. It logically follows that no statement he may make when not under oath can be by the testimony of others introduced for a like purpose.

We find no prejudicial error in the record, and the judgment of the district court is therefore

AFFIRMED.

NOTE.—Murder is malicious homicide. From certain facts malice is to be inferred; here these facts exist; hence malice is to be inferred. Wharton, Homicide, p. 27, ch. 3, par. 39. For a full discussion of murder in the first degree, under the statute afterwards adopted in this state, see *Robbins v. State*, 8 Ohio St., 131. But see *Morgan v. State*, 51 Nebr., 672. As to homicide committed in anger being murder in the first degree, see *Green v. Commonwealth*, 83 Pa. St., 75.—REPORTER.