**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Narvin J. BORDEAUX, Jr.,**
**Defendant–Appellant.**

No. 92–1032.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1992.
Decided Dec. 2, 1992.

Ramon A. Roubideaux, Rapid City, S.D., argued, for defendant-appellant.

Dennis R. Holmes, Asst. U.S. Atty., Pierre, S.D., argued (Kevin V. Schieffer, U.S. Atty., Sioux Falls, S.D., on the brief), for plaintiff-appellee.

Before BOWMAN, LOKEN, Circuit Judges, and LARSON,* Senior District Judge.

LOKEN, Circuit Judge.

A jury convicted Narvin Bordeaux, a Native American, of second degree murder "within the Indian country" in violation of 18 U.S.C. §§ 1111 and 1153. On appeal, Bordeaux argues that the evidence of malice was insufficient to support a murder conviction, that the district court[1] erred in refusing to instruct on the lesser-included offense of voluntary manslaughter, and that Bordeaux's confession should have been suppressed as involuntary. We affirm.

*I. Sufficiency and Weight of the Evidence of Malice.*

Bordeaux argues that the district court erred in denying his alternative post-trial motions for judgment of acquittal or a new trial. In reviewing the denial of a motion for judgment of acquittal, we review the sufficiency of the evidence in the light most favorable to the government. *See United States v. White*, 969 F.2d 681, 684 (8th Cir.1992). In reviewing the denial of a motion for new trial, we consider whether the district court abused its discretion in determining that the verdict was not against the weight of the evidence. *See United States v. Copple*, 827 F.2d 1182, 1191 (8th Cir.1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988).

On March 21, 1991, Shelby White Bear was found dead with his throat slashed at

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The HONORABLE DONALD J. PORTER, United States District Judge for the District of South Dakota. Judge Porter took Senior status on March 16, 1992.

the end of an all-day drinking party at Robert Small Bear's house on the Rosebud Indian Reservation. An autopsy confirmed that White Bear died of blood loss but could not establish the time of death. The testimony established that Bordeaux's mother and others had begun drinking that morning. Bordeaux was also at the party, but testified that he did not start drinking until early that afternoon. Sometime before noon, Hank Shields Him told Bordeaux that White Bear had raped Bordeaux's mother twenty years earlier. Shields Him testified that when Bordeaux's mother confirmed this fact during a midday trip to purchase more alcohol, Bordeaux responded, "I'll get him."

Shields Him testified that he left the party in the evening to eat dinner elsewhere. When he returned, he found that Bordeaux, Small Bear, and John White Horse had beaten White Bear. Shields Him carried the injured and intoxicated White Bear into a small bedroom and then passed out. When he woke up several hours later, he went into the bedroom to give White Bear a drink and found him lying dead in a pool of blood.

Bordeaux testified that, shortly after Shields Him moved White Bear into the bedroom, Bordeaux entered the room to check on White Bear and found him lying on the floor and bleeding. Bordeaux testified that the rest of that night is a blank because he suffered an alcohol-induced blackout. Bordeaux's girlfriend testified that, when she arrived at Small Bear's house just before midnight, Bordeaux showed her White Bear's body and said he killed White Bear because White Bear had raped his mother. When she urged Bordeaux to stop playing with his pocket knife, he replied, "Just be glad it wasn't you." White Horse testified that at some point between the time of the beating and the discovery of the body, Bordeaux woke him up and said, "Well, if you say anything, I'll kill you too."

Following his arrest the following morning, as the police were putting him into a car, Bordeaux shouted to his sister Myra, "When I get out I'll kill you," or words to that effect. One of the arresting officers testified that, at the police station, he overheard Bordeaux tell his mother, "I killed him," and, "I'd kill him again if I had to." After brief questioning, Bordeaux confessed to the crime and signed a written confession that was admitted at trial:

> I killed Shelby White Bear last night at Robert Small Bear's house in a bed room. I cut him in the neck, he never felt anything. He touched his neck and saw the blood, and asked what I did. I stabbed him because he raped my mother a long time ago, but I just found out about it. He deserved it.

Bordeaux was then taken to the Hughes County jail, where the jail supervisor asked him what he was being charged with. Bordeaux answered, "murder," and then stated, "I cut a guy and I'd do it again."

■ To convict of second-degree murder, the jury must find that the defendant killed the victim with "malice aforethought." 18 U.S.C. § 1111(a). "Malice may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Black Elk,* 579 F.2d 49, 51 (8th Cir.1978). The relevant issue is the defendant's state of mind at the time of the homicide. *See United States v. Johnson,* 879 F.2d 331, 334 (8th Cir.1989).

■ Bordeaux argues that the government did not prove malice beyond a reasonable doubt because the time of death was not established, relying upon our decision in *DeMarrias v. United States,* 453 F.2d 211, 214 (8th Cir.1972). In *DeMarrias,* however, there was no evidence linking the defendant to the conduct that caused the victim's death. In this case, the evidence included Bordeaux's blood-stained knife and clothing, his signed confession, and his inculpatory statements to others after the killing. Given the nature of the crime, "The jury could infer from the act itself that [defendant] had the requisite malicious state of mind." *Johnson,* 879 F.2d at 335. We conclude that there was ample evidence

of malice supporting the jury verdict. Therefore, the district court did not err in denying Bordeaux's motions for judgment of acquittal or a new trial.

*II. Failure To Instruct the Jury on Voluntary Manslaughter.*

Bordeaux next argues that the district court erred in refusing his request for an instruction on voluntary manslaughter as a lesser-included offense. Our prior cases establish that a properly requested lesser-included offense instruction should be given if "there is some evidence which would justify conviction of the lesser offense; [and] the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." *United States v. Neiss*, 684 F.2d 570, 571 (8th Cir.1982) (citations omitted).

■ "The lesser-included offense of voluntary manslaughter requires evidence of a killing upon sudden quarrel or heat of passion in contradistinction to evidence of malice required for second degree murder." *United States v. Eagle Elk*, 658 F.2d 644, 648 (8th Cir.1981); *see* 18 U.S.C. § 1112. After the close of evidence, the district court heard arguments of counsel on this issue in a chambers instruction conference. Counsel for Bordeaux argued that the revelation that White Bear had raped Bordeaux's mother many years earlier was sufficient evidence of a heat of passion crime to permit the jury to find voluntary manslaughter:

> [H]e learned about the rape in the morning hours. There's no indication of when this knifing took place. But obviously from the evidence it was sometime later in the day, in the evening sometime. He did not take any action immediately to do anything about that. There was a fight. There was a beating that took place. But the actual knifing, the actual cutting was a quick sudden thrust, according to the pathologist. And, of course, that could have happened on the spur of the moment. And the heat of passion, a person could be thinking about some-

thing and in his condition he was so drunk that he could hardly remember any of the events that took place so that it left only one interpretation, the jury could very well think that he suddenly decided to take a swipe at the guy in a drunken condition.

The district court refused the requested instruction because:

> Even if this Court were to find that learning of one's mother's rape over twenty years ago would incite an ordinary, reasonable person to kill the rapist, the record shows that defendant did not possess such aroused emotion constituting heat of passion. Defendant's actions throughout the day preclude the possibility that defendant was acting under the guise of passion and not judgment. The evidence favors the conclusion that defendant deliberately and reflectively killed Shelby White Bear in revenge for raping defendant's mother over twenty years ago.

■ "The phrase 'in the heat of passion' means an emotional state which is generally provoked or induced by anger, fear, inducement, terror, or rage. In order for this provocation to be an 'adequate provocation' it must be of the type which would naturally cause a reasonable person to act upon that impulse and without reflection or to temporarily lose self control." Devitt, Blackmar, and O'Malley, Federal Jury Practice and Instructions § 38A.08 (1992 Supp.). A defendant's anger with the victim, however, is not sufficient to establish heat of passion without an element of *sudden* provocation. *See, e.g., United States v. Medina*, 755 F.2d 1269, 1272–3 (7th Cir.1985). Evidence of "a string of prior arguments and a continuing dispute," without any indication of some sort of instant incitement, does not constitute a sufficient showing to warrant a voluntary manslaughter instruction. *See United States v. Lynch*, 800 F.2d 765, 768 (8th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1310, 94 L.Ed.2d 164; 481 U.S. 1022, 107 S.Ct. 1907, 95 L.Ed.2d 513 (1987).

■ It is well established that if the defendant had enough time between the

provocation and the killing to reflect on his or her intended course of action, "then the mere fact of passion would not reduce the crime below murder." *Collins v. United States,* 150 U.S. 62, 65, 14 S.Ct. 9, 10, 37 L.Ed. 998 (1893); *see Amos v. Minnesota,* 849 F.2d 1070, 1073 (8th Cir.), *cert. denied,* 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). Thus, Shield Him's revelation of the rape on the morning of the crime does not support a finding of heat of passion because Bordeaux took no action until much later in the day. There is also no evidence that the killing took place during a sudden quarrel. While Bordeaux helped beat White Bear in the early evening, White Bear was not killed until well after the fight ended. Bordeaux presented no evidence at trial indicating that the fight was rekindled when he later entered the bedroom to check on White Bear—in fact, Bordeaux testified that White Bear "wasn't moving. He was laying on the floor. He was bleeding."

On appeal, Bordeaux suggests a new interpretation of the evidence. He now emphasizes that there were two revelations of the rape, the first by Shields Him in the morning, and the second by Bordeaux's mother later in the day. He argues that the jury could have concluded that it was the second disclosure that drove him to kill White Bear in the heat of passion.

There are two flaws in this argument. First, it is based upon hearsay testimony by two witnesses as to what Bordeaux told them about the events in question, hearsay that is inconsistent with Bordeaux's own testimony at trial. At trial, Bordeaux attributed his anger to the disclosure of the rape by Shields Him:

Q: Did your mother tell you about being raped by Shelby White Bear or was it somebody else?

A: It was Hank. Hank was telling everybody. He repeated it about—

Q: Hank was telling everybody about the rape?

A: Yes. He repeated it about two or three times when I was there.

Bordeaux made no mention of any second revelation of the rape by his mother. We decline to credit on appeal an interpretation of the evidence that is inconsistent with Bordeaux's trial testimony and with counsel's argument of this issue to the district court.

Second, even accepting the alleged importance of the second revelation, there is no evidence that Bordeaux's mother confirmed the rape so close in time to the killing as to permit a finding of a heat-of-passion crime. Shields Him testified that this second revelation occurred well before the beating. No witness testified that Bordeaux and his mother had a conversation about the rape between the time that White Bear was carried to the bedroom and the time he was killed.

On this record, there was no rational basis for the jury to find that Bordeaux killed White Bear in the heat of passion caused by one or more revelations that his mother had been raped twenty years earlier. We conclude that the trial court did not abuse its discretion in refusing to instruct on voluntary manslaughter.

### III. Suppression of Bordeaux's Confession.

Finally, Bordeaux argues that his signed confession should have been suppressed as involuntary. The police arrested Bordeaux at his sister's house at 7:30 on the morning after the crime. At the police station, Bordeaux met with FBI Agent John Ellis and BIA Special Officer Phillip Charles. After waiving his *Miranda* rights, Bordeaux admitted to Ellis and Charles that he had killed White Bear and then signed the written confession admitted at trial. Agent Ellis testified that he read each sentence of the confession to Bordeaux before he signed it.

■ Bordeaux argues that the district court should have suppressed the confession as involuntary because he was intoxicated and exhausted at the time he was questioned. We review whether the confession was voluntary *de novo,* but the district court's findings must be upheld unless clearly erroneous. *See United States v. Bartlett,* 856 F.2d 1071, 1084–85 (8th Cir.1988). In determining whether a confession was involuntary, we consider "all the circumstances surrounding the giving of the confession, including the factors spe-

cifically listed in 18 U.S.C. § 3501(b) (1988)." *United States v. Casal*, 915 F.2d 1225, 1228 (8th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991).

At the suppression hearing, arresting officer John Vettleson testified that, when Bordeaux was arrested, he said "that he had been running all night so he was sober." Bordeaux confessed about one hour later. Vettleson, Agent Ellis, and Officer Charles all testified that Bordeaux did not appear intoxicated, was calm, and could walk and talk without difficulty at the time he was arrested and questioned. There was no evidence that Bordeaux's will was overborne in any way, that any of the law enforcement officers acted improperly, or that Bordeaux's confession was not the product of a rational intellect. In these circumstances, the district court did not err in denying the motion to suppress. *Compare Casal*, 915 F.2d at 1229.

The judgment of the district court is affirmed.