STATE OF NEBRASKA, APPELLEE, V. ARTHUR LYLE, APPELLANT.

513 N.W.2d 293

Filed March 11, 1994.    No. S-93-414.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, and FAHRNBRUCH, JJ., and GRANT, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

Following a bench trial, the court below convicted the defendant-appellant, Arthur Lyle, of, among other things, murder in the first degree, a violation of Neb. Rev. Stat. § 28-303 (Reissue 1989). Lyle assigns that conviction as error, claiming, in essence, that it is inconsistent with the trial judge's implicit finding, and the presence of evidence showing, that the killing was committed in the heat of passion. We affirm.

## II. FACTS

On August 2, 1992, Lyle went to a nursing home to visit his mother. With him were his two grandsons. When he arrived at the home, his younger brother, John Gould, and Gould's wife were already there, seated with the mother at a table on the patio.

After some small talk, Gould, the wife, and Lyle began talking about the mother's property because it appeared that she would remain at the home indefinitely. They first talked about the mother's house and what they should do with it. Gould proposed that Lyle take it; Lyle, however, was not interested and suggested that the family sell the house and pay

off its liens with the proceeds. The wife disagreed and accused Lyle of not doing anything for his mother.

Lyle then contended that Gould and the wife had moved all of his things out of the mother's house and locked the garage without telling him. As the discussion turned to Lyle's possessions in the garage, he called the wife a "bitch." Gould stood up and told Lyle that he could not call Gould's wife those names, but Lyle again repeated the derogatory name.

The wife testified that a fight then broke out, but she did not see who threw the first punch. A nurse's aide first heard the men arguing loudly and then heard a loud thud. When he looked out a resident's window, he saw the brothers fighting and Gould straddling Lyle on the ground. When the aide ran out onto the patio to break up the fight, the wife told him it was over.

According to the wife, the initial fighting was "a lot of wrestling around and pushing and shoving kind of thing, and it didn't last very long at all." The brothers were getting up when Lyle threw a punch, hitting Gould in the jaw. Gould reacted by pushing Lyle over a concrete railing onto the grass, approximately 4 feet below. Lyle asserts that Gould struck him first, hitting him in the jaw, and that Gould continued to hit Lyle when he fell on the ground after the first blow. Lyle claims not to have landed any blows on Gould.

Lyle lay on the grass for about 10 to 12 seconds, then got up and headed toward his automobile, followed by his two grandsons. The aide noticed Lyle's glasses on the table and took them over to him. When he gave Lyle the glasses, Lyle appeared angry and told the aide that he was coming back.

After Lyle left the home, he drove his grandchildren to a convenience store and, without ever getting out of his automobile, returned to the home about 20 minutes later. The aide testified that his work was interrupted again when he heard people yelling, "He's coming back. He's driving up the grass." The wife said she saw Lyle drive at a high rate of speed and proceed to drive across the lawn to the front of the porch.

Lyle retrieved a gun which he kept under the front passenger seat of the vehicle and began running toward the porch, yelling "Here, you mother fucker," and immediately started firing. In the meantime, the aide had come running; when he heard the

shots, he stopped at the main entrance. The wife headed toward the main entrance when the shooting began to tell the aide that Lyle had a gun and to call the police. She heard some initial shots, and then Lyle started shooting at her, striking her in the upper arm and back. From where the aide stood, he saw Lyle standing on a ledge below the railing moving his gun arm up and down Gould's body as he shot him. Lyle hesitated, then jumped down and got back in his vehicle, which was parked on the lawn about 5 or 6 feet from the patio, and drove off. Gould was pronounced dead at the scene. He had been shot five times.

Lyle testified that when he was thrown off the porch, he "was so angry, [he] couldn't see straight"; he "was real angry with" his brother and "just couldn't think . . . couldn't see straight." He was still angry when he returned to the home and wanted to talk to his brother about what had happened. He drove up onto the grass so that he could call Gould out to the vehicle without the wife being involved in the conversation. He said he started shooting after he saw his brother jump up and put his hand in his pocket, which led Lyle to believe Gould had a gun; he admitted, however, that he had not shot in self-defense.

Lyle testified to his close relationship with Gould. He told how Gould, 15 years younger, had lived in Lyle's home as an adolescent for about 5 years before moving south to live with his mother. During that time, Lyle provided Gould with room and board and "everything he needed" at his own expense. When Gould returned to Omaha, Lyle gave Gould an automobile and later a motorcycle. This time, both Gould and their mother lived with Lyle for about 3 years.

The wife testified that the brothers had a normal brotherly relationship and that nothing like the fight at the home had ever happened before. She said that to the best of her knowledge, Lyle had never threatened Gould in the past.

In finding Lyle guilty of the murder, the trial judge editorialized as follows:

> I'm convinced in my own mind that you're a decent, hard-working man. And if you had to wait even 24 hours or go out and buy a gun and have a cooling-off period and come back, this never would have happened. That thing that you carried around for your own protection ends up

destroying your brother's life and your life, and I don't think it ever saved you from any problems. All it was was the cause of all the problems you're in now. . . .

. . . .

. . . [I]t's a terrible shame that you didn't have at least 24 hours before you could take the action that you decided to take because I think, had you had that much time, this thing would never have happened.

Lyle asserts that, consistent with the evidence, the foregoing editorial comment amounts to an "implicit finding" by the trial judge that Lyle " 'acted irrationally and from passion, without due deliberation and reflection,' " and that he therefore should not have been found guilty of first degree murder. Brief for appellant at 10.

### III. SCOPE OF REVIEW

The judgment of a trial court on the facts in a jury-waived criminal action has the same force as a jury verdict and will not be set aside on appeal if there is sufficient competent evidence to support the judgment. *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Cowan*, 204 Neb. 708, 285 N.W.2d 113 (1979).

### IV. ANALYSIS

Under the relevant homicide statutes, whether a killing constitutes manslaughter or murder in the first degree depends upon the state of mind of the killer. See § 28-303(1) and Neb. Rev. Stat. § 28-305 (Reissue 1989).

#### 1. DISTINCTIONS BETWEEN CRIMES

In order to be guilty of first degree murder, one must have killed purposely and with deliberate and premeditated malice. § 28-303(1). Malice is that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993). Deliberate malice and premeditated malice are separate and distinct elements of the crime of murder in the first degree. *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993); *State v. Thompson, supra*. Deliberate means not suddenly, not rashly; but deliberation requires that the

defendant considered the probable consequences of his or her act before doing the act. *State v. Cook, supra*; *State v. Thompson, supra*; *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989).

Premeditated means to have formed a design to commit an act before it is done. One kills with premeditated malice if, before the act causing the death occurs, one has formed the intent or determined to kill the victim without legal justification. *State v. Cook, supra*; *State v. Thompson, supra*; *State v. Batiste, supra*. No particular length of time for premeditation is required, provided that the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death. *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992); *State v. Batiste, supra*; *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986). The time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed. *State v. Drinkwalter, supra*; *State v. Batiste, supra*; *State v. Nokes*, 192 Neb. 844, 224 N.W.2d 776 (1975); *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901).

One who has killed without malice upon a sudden quarrel is guilty not of first degree murder, but of manslaughter. See § 28-305.

### 2. NATURE OF SUDDEN QUARREL

A sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control. See *Savary v. State, supra*. It does not necessarily mean an exchange of angry words or an altercation contemporaneous with the unlawful killing and does not require a physical struggle or other combative corporal contact between the defendant and the victim. See *State v. Vosler*, 216 Neb. 461, 345 N.W.2d 806 (1984).

In the instant case, there is very little dispute about the facts. Both parties agree that a fight occurred between Lyle and Gould about 20 minutes prior to the shooting. But this fact alone does not convert the crime from murder to manslaughter.

See *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992). It is not the assault or provocation alone that reduces the grade of the crime, but, rather, the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent. *State v. Clough*, 327 Mo. 700, 38 S.W.2d 36 (1931).

The question is whether there existed reasonable and adequate provocation to excite one's passion and obscure and disturb one's power of reasoning to the extent that one acted rashly and from passion, without due deliberation and reflection, rather than from judgment. *State v. Cave, supra*; *Savary v. State, supra*. See *State v. Morrow*, 237 Neb. 653, 467 N.W.2d 63 (1991). The test is an objective one. *State v. Cave, supra*.

It is well established that if one had enough time between the provocation and the killing to reflect on one's intended course of action, then the mere presence of passion does not reduce the crime below murder. *U.S. v. Bordeaux*, 980 F.2d 534 (8th Cir. 1992). See *Collins v. United States*, 150 U.S. 62, 14 S. Ct. 9, 37 L. Ed. 998 (1893).

> The true inquiry appears to be whether the suspension of reason, if shown to exist, arising from sudden passion, continued from the time of provocation till the very instant of the act producing death took place, and if, from any circumstances whatever shown in evidence, it appears that the party reflected and deliberated, or if in legal presumption there was time or opportunity for cooling, the provocation can not be considered by the jury in arriving at their verdict.

*Savary v. State*, 62 Neb. at 175-76, 87 N.W. at 38. Or, put another way, the question is whether, under all the facts and circumstances, a reasonable time had elapsed from the time of the provocation to the instant of the killing for the passion to subside and for reason to resume control of the mind. *Savary v. State, supra*.

Where the time between the provocation and the killing is short, the practically universal doctrine is that all the circumstances may be considered. *State v. Robinson*, 353 Mo.

934, 185 S.W.2d 636 (1945). They include not only extraneous facts, such as the length of the cooling period and the violence of the assault, but also the showing made as to the effect on the accused as an average person. *Id.*

In the absence of some provocation, a defendant's anger with the victim is not sufficient to establish the requisite heat of passion. *U.S. v. Bordeaux, supra.* See, *State v. Parker*, 358 Mo. 262, 214 S.W.2d 25 (1948) (law will not afford relief of any kind to one who, sufficient time for reflection elapsing, permits his anger to cause him to do wanton and cruel acts against another); *Braunie v. State*, 105 Neb. 355, 180 N.W. 567 (1920) (evidence that victim provoked defendant to anger, by itself, is insufficient as matter of law to reduce murder to manslaughter); *Morrison v. State*, 588 N.E.2d 527 (Ind. App. 1992) (fact defendant was angry, without evidence that victim provoked defendant, does not show sudden heat).

Nor does evidence of a string of prior arguments and a continuing dispute without any indication of some sort of instant incitement constitute a sufficient showing to warrant a voluntary manslaughter instruction. *U.S. v. Bordeaux, supra.* See *United States v. Lynch*, 800 F.2d 765 (8th Cir. 1986), *cert. denied* 481 U.S. 1022, 107 S. Ct. 1907, 95 L. Ed. 2d 513 (1987).

### 3. APPLICATION OF RULES TO FACTS

Lyle's return to the vicinity of the fight manifests actions more consistent with a prior determination to seek out a confrontation than with a state of passion without sufficient time to cool which placed Lyle beyond control of his reason. See *State v. Highsmith*, 74 N.C. App. 96, 327 S.E.2d 628 (1985), *review denied* 314 N.C. 119, 332 S.E.2d 486. In the same 20-minute lapse of time between the provocation and the defendant's actions as in the case before this court, the *Highsmith* court held, the defendant failed to show that he acted under strong provocation where, after he was originally threatened by the victim, the defendant ran six blocks to his residence, obtained a shotgun and shells, and then, approximately 20 minutes later, returned to the vicinity where the original altercation with the victim had occurred and assaulted the victim. Similarly, in *State v. Crouch*, 124 S.W.2d

1185 (Mo. 1938), the Missouri Supreme Court held that a manslaughter instruction was not required where the victim struck the accused with a whiskey bottle, and after some argument, the defendant left to get his gun and returned 15 minutes later and began shooting the victim. See, *State v. Faison*, 90 N.C. App. 237, 368 S.E.2d 28 (1988) (evidence did not compel finding of provocation where defendant first confronted victim at work, walked out to his vehicle to obtain rifle, and returned and shot victim numerous times); *Jackson v. State*, 84 Nev. 203, 438 P.2d 795 (1968) (interval between provocation and killing provided no basis for finding that defendant was acting under irresistible impulse sufficient to warrant voluntary manslaughter instruction where, after fistfight occurred between victim and defendant, defendant retrieved rifle from his automobile, loaded it, and returned to shoot victim); *Com. v. Eddowes*, 397 Pa. Super. 551, 580 A.2d 769 (1990), *appeal denied* 529 Pa. 631, 600 A.2d 951 (1991) (evidence that defendant, after confrontation with victim, twice returned to safety of his home only to reemerge with weapons which he used to stab victim indicated defendant had time to reflect upon decision and was sufficient to support jury's rejection of voluntary manslaughter verdict). Contra *The People v. Harris*, 8 Ill. 2d 431, 134 N.E.2d 315 (1956) (trial court justified in submitting manslaughter to jury where deceased had severely beaten defendant at tavern and defendant returned after beating and shot deceased in back).

Lyle cites *People v. Hudson*, 71 Ill. App. 3d 504, 390 N.E.2d 5 (1979), *appeal after remand* 97 Ill. App. 3d 1144, 424 N.E.2d 50 (1981), in support of his proposition that he acted from the heat of passion without time for deliberation. In *Hudson*, the defendant's conviction of murder was reduced to voluntary manslaughter despite evidence that a period of 5 minutes had elapsed after a fistfight and before the defendant stabbed the victim. In reducing the degree of the offense, the court emphasized that the testimony of the state's witnesses was not adequate to indicate that a sufficient period of time to cool defendant's passions had elapsed. *Hudson*, however, is distinguishable on its facts. The evidence established that a fight had occurred between the victim and the defendant in

which the victim repeatedly kicked the defendant, who was lying on the floor, and had to be pulled away by one of the onlookers. During what appeared to be an extended violent struggle, the defendant sustained a cut over his eye. Furthermore, the court found that the knife used by the defendant, which was grabbed from the kitchen sink, illustrated the hasty and undeliberate nature of the defendant's act. The *Hudson* court also emphasized that the defendant voluntarily remained in the apartment until the police arrived.

The fight between Lyle and Gould was not of the same force or provocation described in *Hudson*. The wife described it as "a lot of wrestling around and pushing and shoving kind of thing, and it didn't last very long at all." Moreover, Lyle's actions were deliberate; he left the home, removed his grandsons from the scene, and returned at a high rate of speed, brandishing his gun. This conduct is not comparable to the actions of one who hastily grabs a kitchen knife. Finally, Lyle left the home after the shooting, and although he admitted his crime, he did at first lie about the location of the gun.

The mental process of forming an intent to kill cannot always, of course, be demonstrated by any direct evidence. *State v. Beers*, 201 Neb. 714, 271 N.W.2d 842 (1978). However, deliberation and premeditation may be proven circumstantially. *Id*.; *State v. Ortiz*, 187 Neb. 515, 192 N.W.2d 151 (1971). In addition to the deliberate manner in which Lyle returned to the home, Lyle's manner in shooting Gould is indicative of premeditated malice. Lyle shot Gould five times by aiming the gun "up and down Gould's body." His shots were not random; he selectively hit the wife as she attempted to exit the area and did not shoot his mother, who sat at the same table as Gould. The location, nature, and number of wounds inflicted are circumstances from which a finder of fact could draw the inference that a defendant with deliberate and premeditated malice killed his victim. See *State v. Lynch*, 215 Neb. 528, 340 N.W.2d 128 (1983).

A trial judge is presumed in a jury-waived criminal trial to be familiar with and apply the proper rules of law, unless it clearly appears otherwise. *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Cowan*, 204 Neb. 708, 285 N.W.2d 113

(1979). It does not clearly appear that the trial judge here did not know the controlling law.

The comment upon which this appeal is in part based does not, as Lyle claims, find that he acted without malice, but, rather, suggests only that he would have been better off if he had not had ready access to a gun. Indeed, the comment bears no relationship to the facts of the case: Lyle did not buy a gun to commit this killing; he already had it in his vehicle. While the comment may reflect that in the trial judge's view Lyle's anger was the motivating force behind the killing of Gould, the fact that Lyle was angry is not the standard for reducing a murder to manslaughter. Rather, it is whether Lyle's anger was prompted by a provocation which would so provoke a reasonable person to obscure and disturb his power of reasoning to the extent that he acted rashly and from passion, without due deliberation and reflection. See, *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992) (victim's refusal to permit defendant to stay with her was not viewed as something that would so provoke reasonable person); *Tripp v. State*, 36 Md. App. 459, 374 A.2d 384 (1977) (defendant cannot have homicide reduced to voluntary manslaughter where time that had elapsed between provocation and deathblow is such that reasonable man would have cooled; this is so even though defendant, being slower to cool off than ordinary person, has not in fact cooled off). The concept of manslaughter " 'is a concession to the infirmity of human nature, not an excuse for undue or abnormal irascibility . . . .' " *Com. v. Pirela*, 510 Pa. 43, 507 A.2d 23, 27 (1986) (quoting *Commonwealth v. Berry*, 461 Pa. 233, 336 A.2d 262 (1975), quoting *Commonwealth v. Paese*, 220 Pa. 371, 69 A. 891 (1908)). Again, contrary to Lyle's claim, the evidence here establishes that he killed purposely and with deliberate and premeditated malice.

## V. JUDGMENT

Being correct, the judgment below is affirmed.

AFFIRMED.

LANPHIER, J., participating on briefs.